# STATE OF CONNECTICUT *v.* BRANDON GARCIA
## (AC 28453)

McLachlan, Lavine and Mihalakos, Js.

Argued December 3, 2007—officially released June 24, 2008

*Mary Anne Royle*, special public defender, for the appellant (defendant).

*Rita M. Shair,* senior assistant state's attorney, with whom were *John A. Connelly,* state's attorney, and, on the brief, *Patrick J. Griffin,* assistant state's attorney, for the appellee (state).

*Opinion*

LAVINE, J. The defendant, Brandon Garcia, appeals from the judgment of conviction, rendered after a jury trial, of possession of cocaine with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278, possession of a controlled substance with intent to sell within 1500 feet of a school in violation of General Statutes § 21a-278a (b), possession of marijuana with intent to sell in violation of General Statutes § 21a-277 and possession of marijuana with intent to sell within 1500 feet of a school in violation of General Statutes § 21a-278a (b). On appeal, the defendant claims that the trial court (1) abused its discretion when it denied his motion in limine to preclude evidence of the cash found in his car, (2) improperly denied his oral motion to suppress the cash found in his car and (3) lacked jurisdiction to determine that he should forfeit the money seized from his car. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On June 22, 2004, undercover members of the Waterbury police tactical narcotics team, Gary Angon, Eddie Apicella, John Healey and Danny Ferrucci, were surveilling the parking lot by the Shell gasoline station and convenience store at 79 Homer Street in Waterbury. The police had received numerous complaints about open drug dealing at this location and had made several narcotics arrests there previously. While Angon and Healey surveyed the area from an unmarked car parked at one of the gasoline pumps, Apicella and Ferrucci kept watch from an unmarked vehicle in a lot across the street. The officers communicated by portable radios.

Shortly after 9:30 p.m., the officers noticed Matthew Jenkins sitting in a Ford Explorer in an area of the lot that lies within 1500 feet of Sprague Elementary School. Minutes later, the defendant arrived in a black Lexus. When Jenkins sounded his vehicle's horn, the defendant acknowledged him. The defendant parked, exited his vehicle and walked to the Explorer, carrying a white shopping bag. At 9:42 p.m., the officers observed the defendant get into the Explorer, remove a smaller bag from the shopping bag and place it next to Jenkins. They observed Jenkins hand the defendant a roll of cash. The defendant then exited the Explorer and headed toward the convenience store. Angon arrested and searched the defendant, finding marijuana on his person, $2650 in one of his pockets and $570 in another pocket.

Jenkins, meanwhile, attempted to escape in his Explorer. When Apicella and Healey blocked Jenkins' exit with their vehicles, Jenkins fled on foot. From the Explorer, the officers recovered one bag containing 2.97 ounces of cocaine and another bag containing one half ounce of marijuana. Jenkins was apprehended subsequently. He testified at trial that when he telephoned the defendant to arrange his purchase of three ounces of cocaine for $2400 and one half ounce of marijuana for $250, the defendant suggested they meet at the Shell station parking lot. Jenkins also testified that he bought drugs from the defendant in the manner described by the undercover officers, exchanging cash for cocaine and marijuana.

At the arrest scene, Apicella assigned Angon to drive the defendant's vehicle to the police station. Angon quickly examined the defendant's vehicle to ensure that nothing in it would be disturbed or cause any danger during transit. On the rear seat, he discovered a shoe box containing cash. In the trunk of the car, he discovered another shoe box containing cash. Angon showed

Apicella the two boxes but did not count the money. Angon then drove the car to the station, logged it in as evidence and conducted an inventory search of its contents. The inventory recovered included the boxes of cash from the rear seat and trunk, which contained $10,510 and $4000, respectively. The money was seized as drug sale proceeds.

The defendant was charged with possession of cocaine with intent to sell by a person who is not drug-dependent in violation of § 21a-278 (a), possession of a controlled substance with intent to sell within 1500 feet of a school in violation of § 21a-278a (b), possession of marijuana with intent to sell in violation of § 21a-277 and possession of marijuana with intent to sell within 1500 feet of a school in violation of § 21a-278a (b). Following a jury trial, he was convicted on all four counts and sentenced to thirty-one years of incarceration. At his sentencing, he filed a motion for the return of the seized currency. The court denied the motion, ordering that the money seized be forfeited to the state. This appeal followed.

I

The defendant's first claim is that the court abused its discretion when it denied his motion in limine to preclude evidence of the cash found in his car because the evidence was not relevant to the crimes charged. The defendant maintains that because the cash at issue did not change hands during the events that gave rise to the criminal charges, the admission of the cash into evidence at trial was more prejudicial than probative. We disagree.

Prior to trial, the defendant filed a motion in limine to prevent the state from admitting into evidence the cash seized from his vehicle. The court denied the motion, concluding that the cash was probative of the defendant's participation in drug sales and therefore

relevant to his intent to sell drugs. The court additionally determined that the prejudicial effect of the evidence did not outweigh its probative value. Subsequently, the cash was admitted into evidence.

In denying the defendant's motion, the court explained that the defendant's alleged use of his vehicle to facilitate drug sales supplied a nexus between the cash recovered from the car and the defendant's intent to sell drugs: "The defendant was seen arriving in his car by the officers . . . . He is alleged to have parked the car a short distance away from where there was an apparent or alleged sale of narcotics. This is not a situation like the cases cited by the defendant in his motion where there is little or no factual nexus between the crime charged and the location from which the evidence in those cases was seized." Discerning a plausible connection between the defendant's intent to sell and the quantum of cash found in the car, the court deemed the evidence more probative than prejudicial.

"[T]he trial court has broad discretion in ruling on the admissibility of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Internal quotation marks omitted.) *State* v. *Carty*, 100 Conn. App. 40, 52, 916 A.2d 852, cert. denied, 282 Conn. 917, 925 A.2d 1100 (2007). "[E]vidence may be excluded by the trial court if the court determines that the prejudicial effect of the evidence outweighs its probative value. . . . [A]dverse evidence is . . . inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . The test for determining whether evidence is unduly prejudicial is not whether it is damaging to the defendant but whether it will improperly arouse the emotions of the jury." (Internal quotation marks omitted.) *State* v. *Bennett-Gibson*, 84 Conn. App. 48, 66, 851 A.2d 1214, cert. denied, 271 Conn. 916, 859 A.2d 570 (2004). "The primary responsibility

for conducting the balancing test to determine whether the evidence is more probative than prejudicial rests with the trial court, and its conclusion will be disturbed only for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *Fernandez*, 76 Conn. App. 183, 189, 818 A.2d 877, cert. denied, 264 Conn. 901, 823 A.2d 1220 (2003).

The admissibility of evidence is governed by the rules of relevance. See *State* v. *Echols*, 203 Conn. 385, 393, 524 A.2d 1143 (1987). "The quantity of money seized from [a] defendant [is] relevant to the issue of intent to sell cocaine." *State* v. *Monar*, 22 Conn. App. 567, 577, 579 A.2d 104, cert. denied, 216 Conn. 828, 582 A.2d 206 (1990). "[E]vidence from which the jury could reasonably infer intent to sell the . . . cocaine includes . . . the amount of . . . cash the defendant possessed . . . ." *State* v. *Baldwin*, 224 Conn. 347, 368–69, 618 A.2d 513 (1993). Accordingly, even if the proceeds from the sale to Jenkins were not included in the cash seized from the defendant's car, the cash was relevant to the issue of the defendant's alleged participation in narcotics trafficking. Such evidence is commonly admitted as circumstantial evidence of a defendant's intent to sell drugs. See *State* v. *Holeman*, 18 Conn. App. 175, 179, 556 A.2d 1052 (1989). "Proof of a defendant's intent generally takes the form of circumstantial evidence . . . ." (Internal quotation marks omitted.) *State* v. *Uribe*, 14 Conn. App. 388, 393, 540 A.2d 1081 (1988).

We find no abuse of discretion in the court's determination that the cash found in the defendant's car was relevant to the crimes charged. We also are not persuaded that this evidence was unduly prejudicial. Our Supreme Court has defined the situations in which the potential prejudicial effect of relevant evidence would suggest its exclusion as the following: "(1) where the facts offered may unduly arouse the jury's emotions,

hostility or sympathy, (2) where the proof and answering evidence it provokes may create a side issue that will unduly distract the jury from the main issues, (3) where the evidence offered and the counterproof will consume an undue amount of time, and (4) where the defendant, having no reasonable ground to anticipate the evidence, is unfairly surprised and unprepared to meet it." (Internal quotation marks omitted.) *State* v. *Harris*, 277 Conn. 378, 391, 890 A.2d 559 (2006).

None of these circumstances is present in this case. First, the defendant cites no authority to support his allegation that the cash at issue tended to arouse the jury's emotion, hostility or sympathy.[1] On the contrary, our courts regularly have regarded a criminal defendant's quantum of cash as circumstantial evidence of his intent to sell drugs. See *State* v. *Baldwin*, supra, 224 Conn. 368–69 ("[t]he evidence from which the jury could reasonably infer intent to sell . . . cocaine includes . . . the amount of . . . cash the defendant possessed"); *State* v. *Uribe*, supra, 14 Conn. App. 394 ("[t]he defendant also possessed a quantity of cash in denominations which could reasonably lead a jury to conclude that the defendant intended to sell marihuana"). Second, the cash seized did not create a collateral issue during the trial but, rather, was germane to the charges. The defendant was free to explain the origin of the money as well as his theory that it was irrelevant to the crimes charged. Third, the evidence

---

[1] Citing *State* v. *Hall*, 82 Conn. App. 435, 438, 844 A.2d 939 (2004), the defendant argues that "[t]he cash was exactly the type of evidence that could excite the passions of the jury or implicate criminal propensity." In *Hall*, however, the type of evidence claimed to be the type that could excite the passions of the jury was not a large quantity of cash but, rather, a large quantity of blank prescription pads. The defendant in that case was convicted of twenty-two counts of illegally prescribing a narcotic substance and fourteen counts of illegally prescribing a controlled substance. As to the admission of the pads, this court ruled that "the error, if any, was harmless . . . ." *State* v. *Hall*, supra, 439–40.

and counterproof did not consume an undue amount of time. Defense counsel's counterargument was direct and brief. Finally, the defendant had reasonable grounds to anticipate the evidence. The fact that he filed a pretrial motion to preclude the evidence at issue proves that he was not surprised by it.

Because a quantum of cash may provide circumstantial evidence of the intent to sell narcotics and because such evidence was not unduly prejudicial in this case, we deem proper the court's denial of the defendant's motion to preclude the cash found in his car.

II

The defendant's second claim is that the court improperly denied his motion to suppress the cash recovered from his car because the boxes containing the cash were found and opened at the arrest scene without a warrant in violation of his rights under the fourth amendment to the federal constitution[2] and article first, § 7, of the constitution of Connecticut.[3] In particular, the defendant claims that the court improperly denied his motion to suppress (1) the cash found on the rear seat of the passenger compartment because the search incident to arrest exception to the warrant

---

[2] The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

[3] Article first, § 7, of the constitution of Connecticut provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

Although the defendant claims his rights were violated under both the United States constitution and the constitution of Connecticut, he has not provided a separate analysis for his state constitutional claim. Consequently, we deem it abandoned and will not afford it review. *State* v. *Fauntleroy*, 101 Conn. App. 144, 159 n.5, 921 A.2d 622 (2007).

requirement applies only when an arrestee is able to reach for weapons or destroy evidence and (2) the cash found in the trunk because the inventory search exception cannot be applied to evidence discovered at the arrest scene.[4] We do not agree.

The defendant's motion to suppress was not made before trial but after the state had rested. By the time the defendant had moved to suppress the evidence in question, the jury was fully aware of it. After hearing arguments on the motion over a period of two days, the court denied it, determining that (1) the cash on the rear seat was discovered legally pursuant to a search incident to arrest and (2) the cash in the trunk was discovered legally pursuant to an inventory search. The court suggested that defense counsel present his positions regarding the evidence at issue during his closing argument.[5] In his closing argument, defense counsel characterized as inconsistent the officers' testimony about when and where the evidence at issue was discovered.

---

[4] The defendant also claims that the court improperly denied his motion to suppress all the cash recovered from the vehicle on the ground that it was stored in closed containers, the opening of which required a search warrant. Because this claim is subsumed by the search incident to arrest and inventory search exceptions, we need not address it. See *State* v. *Longo*, 243 Conn. 732, 740, 708 A.2d 1354 (1998) ("the Appellate Court repeatedly has upheld . . . warrantless searches of closed containers located in automobiles where probable cause existed to search the vehicle"); see also *State* v. *Billias*, 17 Conn. App. 635, 642, 555 A.2d 448 (1989), citing *United States* v. *Frank*, 864 F.2d 992, 1001–1002 (3d Cir. 1988) (permissible for police to open closed containers in inventory searches if they follow standard police procedures), cert. denied, 490 U.S. 1095, 109 S. Ct. 2442, 104 L. Ed. 2d 998 (1989).

[5] The court stated, "At this point, I'm going to deny without prejudice your motion. I will permit you to develop facts as part of your case to further support your claim. We are going to do that in the presence of the jury. . . . If you demonstrate facts which change my mind, I will then consider whether or not the toothpaste can be put back in the tube. . . . It may be that that is an argument for you . . . with the jury during closing argument, but again, we would address that if, and only if, I am persuaded that the evidence shows otherwise."

We first set forth our standard of review. "The Fourth Amendment to the United States constitution protects the right of the people to be secure in their persons, houses, papers and effects against unreasonable search and seizures. Ordinarily, police may not conduct a search unless they first obtain a search warrant from a neutral magistrate after establishing probable cause. [A] search conducted without a warrant issued upon probable cause is per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions. . . . These exceptions have been jealously and carefully drawn . . . and the burden is on the state to establish the exception." (Internal quotation marks omitted.) *State* v. *Orellana*, 89 Conn. App. 71, 79–80, 872 A.2d 506, cert. denied, 274 Conn. 910, 876 A.2d 1202 (2005).

"Under the exclusionary rule, evidence must be suppressed if it is found to be the fruit of prior police illegality. . . . On appeal, we apply a familiar standard of review to a trial court's findings and conclusions in connection with a motion to suppress. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [W]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision . . . . Whether the trial court properly found that facts submitted were enough to support a finding of probable cause is a question of law. . . . Because a trial court's determination of the validity of a . . . search [or seizure] implicates a defendant's constitutional rights, however, we engage in a careful examination of the record to ensure that the court's decision was supported by substantial evidence. . . . However, [w]e . . . give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it

and to pass upon the credibility of witnesses." (Internal quotation marks omitted.) Id., 79.

As the defendant's claim challenges the court's denial of the motion to suppress on separate grounds, we address them in turn.

## A

Claiming that the court improperly denied his motion to suppress the cash discovered on the rear seat of the passenger compartment, the defendant challenges the court's determination that Angon's inspection of the passenger compartment at the scene of the arrest was a search incident to arrest. According to the defendant, the search incident to arrest exception applies only when the arrestee is able to reach for weapons or destroy evidence.

In its ruling regarding the motion to suppress the cash found on the rear seat of the passenger compartment, the court stated: "The law is clear that the scope of a search incident to a full custodial arrest of a motor vehicle operator, which was the case in this case, includes a search of the passenger compartment of the vehicle and the contents of any open or closed containers found in the passenger compartment. That includes the rear seat. That includes things like the glove compartment, even if that compartment is locked. This is true . . . even where the arrestee has been removed from the vehicle and [is] handcuffed and placed in a patrol car. Consequently, as I see it, the defendant has no claim with respect to the shoe box seized from the passenger compartment." We agree with the court's interpretation of the law.

"There are four recognized situations where a warrantless search of a car may lead to the conclusion that such a search was reasonable under the United States or state constitutions. They are: (1) it was made incident

to a lawful arrest; (2) it was conducted when there was probable cause to believe that the car contained contraband or evidence pertaining to a crime; (3) it was based upon consent; or (4) it was conducted pursuant to an inventory of the car's contents incident to impounding the car." (Citation omitted; internal quotation marks omitted.) *State* v. *Miller*, 29 Conn. App. 207, 237–38 n.1, 614 A.2d 1229 (1992), aff'd, 227 Conn. 363, 630 A.2d 1315 (1993); see *State* v. *Delossantos*, 211 Conn. 258, 266–67, 559 A.2d 164, cert. denied, 493 U.S. 866, 110 S. Ct. 188, 107 L. Ed. 2d 142 (1989).

"[W]hen police make a lawful custodial arrest of an occupant of an automobile, and the arrestee is detained at the scene, police may contemporaneously search without a warrant the interior passenger compartment of the automobile." *State* v. *Delossantos*, supra, 211 Conn. 266–67. "The search incident to an arrest exception . . . has traditionally been justified by the reasonableness of searching for weapons, instruments of escape and evidence of crime when a person is taken into custody and lawfully detained." (Internal quotation marks omitted.) *State* v. *Santiago*, 17 Conn. App. 273, 276–77, 552 A.2d 438 (1989). "[W]e have recognized that the police may make a search without a warrant incidental to a lawful custodial arrest. . . . Custodial arrests not only serve to protect the police themselves, but also serve . . . to assist in the investigation of crime." (Citations omitted.) *State* v. *Dukes*, 209 Conn. 98, 121, 547 A.2d 10 (1988).

The defendant's theory that the search incident to arrest exception requires that an arrestee be able to reach for weapons or destroy evidence is not supported by our case law. "In *New York* v. *Belton*, [453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981)], the United States Supreme Court held that a lawful custodial arrest justifies a contemporaneous search of the entire passenger compartment of an automobile, *whether or not the*

*arrestee actually had control over the area."* (Emphasis added.) *State* v. *Santiago,* supra, 17 Conn. App. 277. Indeed, our Supreme Court in *State* v. *Badgett,* 200 Conn. 412, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986), declared that it "ordinarily will refuse to evaluate whether or not an individual arrested while in an automobile actually had access to the passenger compartment at the time of the search," citing several cases in which the searches were upheld even though the arrestee had no apparent opportunity to gain access to the passenger compartment of the automobile.[6] (Internal quotation marks omitted.) *State* v. *Lizotte,* 11 Conn. App. 11, 22, 525 A.2d 971, cert. denied, 204 Conn. 806, 528 A.2d 1154 (1987), quoting *State* v. *Badgett,* supra, 427. Significantly, "a search incident to an arrest [need not] be limited to evidence of the crime for which a defendant is initially arrested." *State* v. *Santiago,* supra, 277.

Because the scope of a search incident to the arrest of a motor vehicle operator includes the passenger compartment of the vehicle, regardless of whether the arrestee could gain access to it, the cash discovered on the rear seat of the defendant's vehicle was admitted properly pursuant to Angon's lawful arrest of the defendant.[7] Consequently, the defendant's claim that the court improperly denied his motion to suppress this cash must fail.

---

[6] See *State* v. *Badgett,* supra, 200 Conn. 427, citing *United States* v. *Cotton,* 751 F.2d 1146, 1148–49 (10th Cir. 1985) (*Belton* applicable even though defendant outside car and handcuffed); *Traylor* v. *State,* 458 A.2d 1170, 1173 (Del. 1983) (defendant in handcuffs); *State* v. *Valdes,* 423 So. 2d 944, 944 (Fla. App. 1982) (defendant seated in police car); *State* v. *Hopkins,* 163 Ga. App. 141, 141, 293 S.E.2d 529 (1982) (defendant seated in police car).

[7] We note, furthermore, that the cash at issue would not have been suppressed had the court deemed its discovery inevitable. "[S]uppression of unconstitutionally obtained evidence [is required] only if the state fails to establish that the evidence would subsequently have been obtained pursuant to the inevitable discovery doctrine." *State* v. *Miller,* 227 Conn. 363, 386, 630 A.2d 1315 (1993).

B

The defendant also claims that the court improperly determined that Angon recovered the money from the trunk of the defendant's car pursuant to a valid inventory search. Specifically, the defendant argues that the court should not have credited Angon's testimony that this evidence was the product of a valid inventory search in light of Apicella's testimony that the money was discovered at the arrest scene prior to the inventory search at the police station.

Mindful that "[u]nder the exclusionary rule, evidence must be suppressed if it is found to be the fruit of prior police illegality"; (internal quotation marks omitted) *State* v. *Orellana,* supra, 89 Conn. App. 79; we recognize the inventory search as "a well-defined exception to the warrant requirement." (Internal quotation marks omitted.) *State* v. *Gasparro,* 194 Conn. 96, 107, 480 A.2d 509 (1984), cert. denied, 474 U.S. 828, 106 S. Ct. 90, 88 L. Ed. 2d 74 (1985). "In the performance of their community caretaking functions, the police are frequently obliged to take automobiles into their custody. . . . A standardized procedure for making a list or inventory as soon as reasonable after reaching the stationhouse not only deters false claims but also inhibits theft or careless handling of articles taken from the arrested person." (Citations omitted; internal quotation marks omitted.) Id., 107–108.

Angon testified that in keeping with Waterbury police policy, he cursorily searched the car at the arrest scene and later counted the cash during an inventory search at the police station. Healey testified that at the scene of the crime, Angon "did a search of the immediate area of the Lexus that [the defendant] had exited from. He took all the evidence he had, and he drove that vehicle back to headquarters." Similarly, Apicella testified that at the arrest scene, Angon quickly examined

the Lexus to ensure that nothing in it would cause a danger, or be disturbed, during transit. This testimony, which essentially corroborated the police report, suggests that Angon's examination of the car at the arrest scene was motivated by the "three governmental interests support[ing] inventory searches: (1) protection of the police from danger; (2) protection of the police against claims and disputes over lost or stolen property and (3) protection of the owner's property while it remains in police custody." (Internal quotation marks omitted.) *State* v. *Hicks*, 53 Conn. App. 470, 475–76, 730 A.2d 649 (1999).

The defendant alleges that there is a significant contradiction between Angon's testimony that the money in the trunk was discovered during the inventory search and Apicella's testimony that Angon told him at the arrest scene and prior to the inventory search that "there [was] money in these boxes." The defendant is not claiming that the court did not have sufficient evidence on which to base its decision. Rather, he argues that the evidence the court relied on was not sufficiently credible. This claim therefore distills to a credibility contest. See *State* v. *Nowell*, 262 Conn. 686, 695, 817 A.2d 76 (2003).

In ruling on the motion to suppress the cash recovered from the trunk, the court stated: "[T]he issue is whether that shoe box was discovered and opened pursuant to a valid inventory search. [Defense counsel] claimed that it was not [discovered pursuant to a valid inventory search] based upon Detective Apicella's testimony in which he indicated that he returned to the gasoline station where he found Detective Angon and [the defendant] in custody. His testimony *may, and I stress the word may,* be somewhat contradictory with that of Detective Angon, who testified that he conducted an inventory search of the vehicle at the police station and [that] it was at that point that he discovered

the shoe box containing the cash in the trunk." (Emphasis added.)

The court made credibility determinations to conclude that Angon properly received and recorded the box of cash from the trunk of the car as part of an inventory search, as is apparent from the following statements: "[I]t appears that [Angon] may have opened the trunk briefly at the scene, but certainly the sense I got from the testimony, *which I credit*, is that he actually took the shoe box out of the motor vehicle at the police department, and that's where he found one pile of cash . . . . [T]he court credits the testimony of Detective Angon that the second shoe box, the one taken from the trunk, was properly taken as part of a lawful inventory search." (Emphasis added.)

"[W]e . . . give great deference to the findings of the trial court because of its function to weigh and interpret the evidence before it and to pass upon the credibility of witnesses." (Internal quotation marks omitted.) *State* v. *Orellana*, supra, 89 Conn. App. 79. We note that "[t]his court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . In a case that is tried to the court . . . the judge is the sole arbiter of the credibility of witnesses, and the weight to be given to their specific testimony." (Internal quotation marks omitted.) *McClean* v. *Commissioner of Correction*, 103 Conn. App. 254, 263, 930 A.2d 693 (2007), cert. denied, 285 Conn. 913, 943 A.2d 473 (2008); see *State* v. *DaEria*, 51 Conn. App. 149, 157, 721 A.2d 539 (1998).

In deference to the court's decision, which was based on credibility determinations, that the cash at issue was recovered pursuant to the standardized procedures of

an inventory search, we conclude that the court properly denied the motion to suppress the evidence gathered during the search of the trunk of the defendant's vehicle.

III

The defendant last claims that the court improperly ordered the forfeiture of $14,510 seized from his vehicle. Specifically, he asserts that this cash could be forfeited only after an *in rem* hearing pursuant to General Statutes § 54-36h. Absent such a hearing, the defendant argues, the court lacked subject matter jurisdiction to make a forfeiture determination about money that did not change hands in the drug transaction under prosecution. The court, determining that the money seized from the defendant's vehicle constituted drug proceeds, concluded that it was authorized to forfeit the money to the state pursuant to General Statutes § 54-36a (c). We agree with the court's conclusion.

The defendant's claim raises issues of statutory construction, over which our review is plenary. *Whitaker* v. *Commissioner of Correction*, 90 Conn. App. 460, 470, 878 A.2d 321, cert. denied, 276 Conn. 918, 888 A.2d 89 (2005). "A fundamental tenet of statutory construction is that statutes are to be considered to give effect to the apparent intention of the lawmaking body. . . . The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." (Internal quotation marks omitted.) Id., citing General Statutes § 1-2z.

"Where . . . more than one statute is involved, we presume that the legislature intended them to be read

together to create a harmonious body of law . . . and we construe the statutes, if possible, to avoid conflict between them." (Citations omitted.) *Berger* v. *Tonken*, 192 Conn. 581, 589–90, 473 A.2d 782 (1984). "[I]t is an elementary rule of construction that all sections of an act relating to the same subject matter should be considered together . . . . Insofar as possible the separate effect of each individual part or section of an act is made consistent with the whole." (Internal quotation marks omitted.) *Ossen* v. *Wanat*, 217 Conn. 313, 320, 585 A.2d 685, cert. denied, 502 U.S. 816, 112 S. Ct. 69, 116 L. Ed. 2d 43 (1991).

The subsection invoked by the court in this case, § 54-36a (c), which is contained in chapter 959 of the General Statutes, part III, titled, "Seized Property," specifically authorizes the judicial disposition of contraband, defined as "any property, the possession of which is prohibited by any provision of the general statutes," at the conclusion of criminal actions. *"Unless such seized property is stolen property* and is ordered returned pursuant to subsection (b) of this section or unless such seized property is adjudicated a nuisance in accordance with section 54-33g, *or unless the court finds that such property shall be forfeited or is contraband,* or finds that such property is a controlled drug, a controlled substance or drug paraphernalia as defined in subdivision (8), (9) or (20) of section 21a-240, it shall, at the final disposition of the criminal action or as soon thereafter as is practical, or, if there is no criminal action, at any time upon motion of the prosecuting official of such court, order the return of such property to its owner within six months upon proper claim therefor." (Emphasis added.) General Statutes § 54-36a (c). "A person should not be allowed to vest himself with a possessory interest by crime or to invoke the law in order to disengage himself from the unlawfulness of

his conduct." *State* v. *Morant*, 242 Conn. 666, 671–72, 701 A.2d 1 (1997).

General Statutes § 54-36h, on which the defendant relies, is entitled, "Forfeiture of moneys and property related to illegal sale or exchange of controlled substances or money laundering. In rem proceeding. Disposition." It outlines the procedures required for effectuating *in rem* forfeiture proceedings.[8] On its face, the language of this statute could be applied to currency such as that at issue in this case. The legislative history of § 54-36h, as well as the words "related to" in its title, suggest, however, that this section addresses money and property not disposed of by the court at the disposition of a criminal trial pursuant to § 54-36a. In passing § 54-36h, legislators addressed the type of property at issue in the case at bar: "[I]f [the state] were to go after a dealer and he had $100,000 in the bank, the government could not claim the whole $100,000 as

---

[8] General Statutes § 54-36h provides in relevant part: "(a) The following property shall be subject to forfeiture to the state pursuant to subsection (b) of this section: (1) All moneys used, or intended for use, in the procurement, manufacture, compounding, processing, delivery or distribution of any controlled substance, as defined in subdivision (9) of section 21a-240; (2) All property constituting the proceeds obtained, directly or indirectly, from any sale or exchange of any such controlled substance in violation of section 21a-277 or 21a-278; (3) All property derived from the proceeds obtained, directly or indirectly, from any sale or exchange for pecuniary gain of any such controlled substance in violation of section 21a-277 or 21a-278; (4) All property used or intended for use, in any manner or part, to commit or facilitate the commission of a violation for pecuniary gain of section 21a-277 or 21a-278 . . . .

"(b) Not later than ninety days after the seizure of moneys or property subject to forfeiture pursuant to subsection (a) of this section, in connection with a lawful criminal arrest or a lawful search, the Chief State's Attorney or a deputy chief state's attorney, state's attorney or assistant or deputy assistant state's attorney *may* petition the court in the nature of a proceeding in rem to order forfeiture of said moneys or property. Such proceeding shall be deemed a civil suit in equity, in which the state shall have the burden of proving all material facts by clear and convincing evidence. The court shall identify the owner of said moneys or property and any other person as appears to have an interest therein . . . ." (Emphasis added.)

potentially illegal and not give him the use of that." 32 H.R. Proc., Pt. 20, 1989 Sess., p. 6939, remarks of Representative Richard D. Tulisano. *"A different result is mandated, however, where the property at issue is found alongside and seized contemporaneously with the drugs. In that instance, the connection between the property and the drugs is less speculative and, accordingly, that property is less worthy of an inference that it may be property that is not subject to [in rem] forfeiture [proceedings]."* (Emphasis added.) *State* v. *$28,194.63 U.S. Currency*, Superior Court, judicial district of Ansonia-Milford, geographical area number five, Docket No. CR5-6977 (April 17, 2001) (29 Conn. L. Rptr. 672). "If the property that is confiscated in an automobile with drugs or in an apartment where you have half a million dollars in small bills as a part of an arrest, could this be used for a legal defense?" 32 H.R. Proc., supra, pp. 6938–39, remarks of Representative J. Peter Fusscas. "[I]n the situation you described, that would not be available. That would be confiscated funds." Id., p. 6939, remarks of Representative Tulisano.

The distinction in Connecticut statutes delineating the disposition of property seized as evidence, pursuant to § 54-36a, from property subject to forfeiture proceedings, pursuant to § 54-36h, leads us to conclude that seized contraband does not require *in rem* forfeiture proceedings, as unseized property does. "[A] careful reading of all of the relevant provisions of [§ 54-36h], as well as a search of its legislative history, reveal[s] that [the statute] was only intended to protect from forfeiture that property that has not yet been seized by the state . . . . *This exemption was not intended, however, to extend to property that has been seized simultaneously with drugs, incident to a drug sales arrest."* (Emphasis added.) *State* v. *$28,194.63 U.S. Currency*, supra, 29 Conn. L. Rptr. 672.

The court in this case distinguished money that has exchanged hands in a drug transaction from the type of property at which § 54-36h is aimed.[9] The court nonetheless made a finding that the money at issue constituted drug proceeds even though it had not exchanged hands during the transaction on which the charges against the defendant were based: "The defendant was not employed at the time and no plausible explanation was offered as to how the defendant could have lawfully possessed the large amount of cash [found in the vehicle]." Consequently, the court ordered the currency forfeited to the state pursuant to § 54-36a (c).

We agree with the court's conclusion that "the legislative history makes clear that these two statutes are to operate in tandem, even in cases involving seized cash from drug transactions." Id. We conclude that the court in this case properly exercised its authority to forfeit contraband to the state pursuant to § 54-36a (c). "The language of § 54-36h (b) is clear and unambiguous. It means what it says. The state '*may* petition the court in the nature of a proceeding in rem to order forfeiture,' but if it chooses to do so, the petition must be filed '[*n*]*ot later than ninety days* after the seizure of moneys or property.'" (Emphasis in original.) *State* v. *$1970*, 43 Conn. Sup. 203, 206, 648 A.2d 917 (1994). The fact that the state must act within ninety days if it chooses to bring an *in rem* proceeding does not prohibit a court from making forfeiture determinations about contraband at issue in a criminal trial pursuant to § 54-36a (c).

Having reviewed the relevant statutes and case law, we hold that § 54-36a (c) empowers courts presiding over criminal actions to dispose of contraband, including currency linked to illegal drug transactions, provided that a nexus exists between the contraband and

[9] The court stated that "[General Statutes § 54-36h] is intended to permit the seizure and forfeiture of more than just the cash that may exchange hands in [a] drug transaction."

the crimes charged.[10] In this case, the court specifically found that nexus to exist when it concluded that the currency "constitutes proceeds of an illegal drug transaction." The defendant, who was unemployed at the time of his arrest, offered no plausible explanation as to how the cash was obtained. The cash was found in a vehicle being used in a drug transaction. Finally, the defendant was convicted. The defendant's claim that the court lacked the authority to dispose of the seized money must fail.[11]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] In the United States Court of Appeals for the Second Circuit, the weight of the authority indicates that the government in an *in rem* forfeiture hearing relating to narcotics trafficking charges must demonstrate a nexus between the seized property and illegal drug activity. See *United States* v. *Daccarett*, 6 F.3d 37, 56 (2d Cir. 1993).

Although the disputed order before us was not an *in rem* forfeiture determination but, rather, a judicial order at the culmination of a criminal trial, this nexus principle serves to guide courts on the due process limitations that apply to *in personam* forfeiture determinations given the property interests involved.

For example, in *United States* v. *$31,990 in U.S. Currency*, 982 F.2d 851, 854–55 (2d Cir. 1993), the court held that the following factors favor forfeiture of currency: the currency is found in a vehicle containing drugs; the currency is found close to drug activity; in cases where drugs are present, the currency constitutes an unusually large amount of money and is bundled. In *United States* v. *$103,025.00 in U.S. Currency*, 741 F. Sup. 903, 904 (M.D. Ga. 1990), the court noted that "Congress certainly had no intention to elevate naked possession into equitable ownership in circumstances pointing to the likelihood that the possessor was a courier of drug money."

[11] In light of our conclusion that § 54-36a (c) provided a basis for the court's action, we do not reach the issue of whether the court had the inherent or common-law authority to order the seized money forfeited. We also are not required to reach the issue of whether this section "codified" any prior, inherent common-law authority to order the proceeds forfeited.