******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* PATRICK S. REDMOND
## (AC 39725)

Keller, Prescott and Harper, Js.

*Syllabus*

The plaintiff in error, C, who is the father of S, the defendant in the underlying criminal proceeding, brought a writ of error following the trial court's denial of C's motion for the return to him of certain property he claimed to own. The writ of error concerned various firearms and ammunition that were seized by police pursuant to a valid search warrant issued in the course of a narcotics investigation. S was arrested and later charged with various drug and weapons offenses. After engaging in negotiations, the state and S entered into a plea agreement, pursuant to which the state agreed to nolle six of the eight charges against S, and, in return, S agreed to, inter alia, forfeit the seized property to the state for destruction. Although C was not a party to the criminal action, C's awareness of both the plea negotiations and the contemplated forfeiture of the weapons was made clear to the court and the state through S's attorney. During the sentencing hearing, C did not object to the court's order for the forfeiture and destruction of the seized property. Subsequently, C filed a motion for stay of order of destruction and return of seized property with the criminal court. The trial court denied C's motion, and C appealed to this court, which dismissed his appeal on the ground that this court lacked subject matter jurisdiction to consider the claims in a direct appeal of the criminal conviction because C was not a party to the underlying criminal proceeding. Thereafter, C filed a petition for a writ of error in the Supreme Court, which transferred the matter to this court. C claimed, inter alia, that the trial court improperly ordered the forfeiture of the seized property pursuant to the statute (§ 54-36a [c]) that governs the disposition of seized property, which he claimed applied only to seized contraband and certain cash linked to illegal drug transactions, and not to firearms. C claimed that the trial court, instead, should have conducted in rem forfeiture proceedings pursuant to statute ([Rev. to 2013] § 54-33g) in order to effectuate the forfeiture of his seized firearms. *Held*:

1. The trial court properly acted pursuant to § 54-36a (c) in ordering the forfeiture of the seized property; that statute was not limited to contraband and certain cash linked to illegal drug transactions as claimed by C, but rather empowers courts presiding over criminal actions to dispose of seized property, provided a nexus exists between the seized property and the crimes charged, and, thus, so long as a nexus exists between the seized property and the crimes charged, it is irrelevant whether the property was contraband, and, in the present case, the court's determination that the requisite nexus existed between the seized firearms and S's narcotics business was logical and supported by the record, which showed that S was selling narcotics from a residence owned and co-occupied by C, that the weapons were found throughout the residence, and that S either possessed or had easy access to all of the weapons for use in his illicit business dealings.

2. C could not prevail on his claim that the trial court improperly entered the forfeiture order without providing him with notice and an opportunity to be heard, in violation of the in rem forfeiture procedures set forth in § 54-33g: that court properly ordered the forfeiture under § 54-36a (c), which does not require the court or the state to provide formal notice to any individual that may have an interest in seized property that is to be forfeited, and C was not deprived of an opportunity to be heard on the disposition of the property, as the record indicated that he was aware of the proposed disposition of the property and chose not to file a timely motion pursuant to the applicable rule of practice (§ 41-13) for the return of the seized property during the pendency of the criminal action and, instead, chose to assert his claim to the seized property after the final disposition of the criminal action; accordingly, the writ of error was dismissed.

Argued January 17—officially released October 10, 2017

Writ of error from an order of the Superior Court in the judicial district of Litchfield, *Ginocchio, J.*, denying the motion for the return of certain property filed by the plaintiff in error, brought to the Supreme Court, which transferred the matter to this court. *Writ of error dismissed.*

*Mitchell Lake*, for the plaintiff in error.

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, was *David S. Shepack*, state's attorney, for the defendant in error.

*Opinion*

HARPER, J. This case comes before the court on a writ of error brought by the plaintiff in error, Patrick C. Redmond, who is the father of Patrick S. Redmond, the defendant in the underlying criminal proceeding.[1] In his writ of error, Redmond alleges that the trial court improperly (1) ordered the forfeiture of certain seized property pursuant to General Statutes § 54-36a and (2) entered its forfeiture order without providing him notice and an opportunity to be heard in violation of the in rem forfeiture procedures set forth in General Statutes (Rev. to 2013) § 54-33g.[2] For the reasons that follow, we disagree and dismiss the writ of error.[3]

The following relevant facts and procedural history are apparent on the record.[4] This writ of error concerns sixteen firearms,[5] at least one magazine, and an unknown quantity of ammunition that were seized by the police on February 13, 2013, pursuant to a valid search warrant issued in the course of a narcotics investigation.[6] That investigation revealed that the defendant was selling drugs from a residence owned by Redmond, and occupied by both Redmond and the defendant. The residence was not subdivided, and Redmond and the defendant had equal access to all areas of the residence.

During their search of the residence, the police found nine of the sixteen firearms "scattered about the living quarters, hidden in the seat cushions, in a dresser, leaned up against the walls," hidden under a couch in the living room, as well as in the defendant's bedroom. The remaining seven weapons were found in a safe on the second floor of the residence, which the defendant opened using a key in order to surrender the weapons to the police. Alongside these weapons, the police also seized various narcotics and narcotics paraphernalia. Redmond was not present for the search of the residence.

Later that day, the defendant was arrested. After receiving *Miranda*[7] warnings, the defendant provided the police with a sworn statement in which he admitted his ownership of many of the seized weapons, and asserted that Redmond consented to his possession and use of the remaining weapons. The defendant also told the police that Redmond knew that he was selling narcotics from the residence and had previously asked him to cease doing so. Nothing in the record suggests that Redmond took steps to limit the defendant's access to the weapons.

The defendant thereafter was charged with eight counts of drug and weapon offenses,[8] for which he faced a significant term of imprisonment if convicted. Over the next four months, the defendant engaged in plea negotiations with the state in which the court, *Ginocchio*, *J.*, actively participated. During those negotiations, the defendant was represented by Attorney

Anthony F. DiPentima. At that time, DiPentima also provided counsel to Redmond, though Redmond was not a party to the criminal action.[9] Redmond's awareness of both the plea negotiations and the contemplated forfeiture of the weapons was made clear to the court and the state through DiPentima, and it appears that Redmond was present for at least some of those negotiations. From the outset, the plea negotiations involved leveraging the disposition of the seized property to obtain a more favorable disposition of the charges against the defendant.

On March 18, 2013, Redmond executed an affidavit, witnessed by DiPentima in his capacity as a commissioner of the Superior Court, claiming ownership of the seized weapons, ammunition, and magazine. This affidavit, however, was never submitted to the court or the state. The prosecutor also indicated that the agreement to surrender all of the disputed property in return for favorable treatment was suggested by DiPentima.

On May 31, 2013, the state agreed to nolle six of the eight charges against the defendant. In return, the defendant agreed to (1) forfeit the seized property to the state for destruction; (2) plead guilty to one count of possession with intent to sell in violation of General Statutes § 21a-277 (b); and (3) enter an *Alford* plea[10] to one count of illegal transfer of a pistol or revolver in violation of General Statutes (Rev. to 2013) § 29-33.[11] At that time, the terms of the plea agreement were put on the record, including the forfeiture and destruction of the disputed property.[12] The agreement contemplated a total effective sentence of eight years, execution suspended after three years, with three years of probation, and the defendant retained the right to argue for a lesser sentence at the sentencing hearing on December 10, 2013.

At that hearing, DiPentima argued for a suspended sentence for the defendant, as the defendant had already been incarcerated for approximately four months. He also offered the following argument regarding Redmond's interest in the seized firearms: "We've talked about the weapons. There's been a lot of angst and concern, especially from [Redmond], a devout hunter, a man who has owned firearms responsibly for a number of years, [about] the ownership of those firearms, despite the fact as to where in the house the firearms were located, even though it was not a separate apartment, per se, where [the defendant] resided with his fiancé." At the conclusion of that hearing, the court imposed a total effective sentence of eight years of imprisonment, execution suspended, with three years of probation. The court also ordered the forfeiture and destruction of the weapons, magazine, and ammunition. At the sentencing hearing, Redmond did not object to the forfeiture and destruction of the disputed property.

The leniency of the defendant's sentence is apparent when compared with the maximum sentence allowed by the General Statutes that the defendant would have potentially faced had he proceeded to trial under these charges. The total effective sentence, for the charges the defendant entered pleas on, was twelve years of imprisonment.[13] Additionally, had the defendant proceeded to trial on the charges the state agreed to nolle pursuant to this agreement, he would have potentially faced an additional twenty-nine years and three months of imprisonment.[14] Redmond subsequently hired new counsel who filed on his behalf a "Motion for Stay of Order of Destruction and Return of Seized Property" with the criminal court, in which he claimed to be the owner of the firearms and argued that § 54-33g gave him a right to notice of any forfeiture proceeding. See *State* v. *Redmond*, 161 Conn. App. 622, 624–25, 128 A.3d 956 (2015), cert. denied, 320 Conn. 918, 132 A.3d 1093 (2016). Redmond made this motion in the concluded criminal matter rather than initiating a separate action. The court held hearings on the motion on March 14, 2014, and April 15, 2014, at which Redmond and the state offered argument, but no evidence or testimony was taken.

The court thereafter denied Redmond's motion. Although the court did not issue a written decision, the grounds on which the court denied the motion were stated during the April 15, 2014 hearing. Specifically, the court indicated that (1) no notice was required because the property was ordered forfeited under § 54-36a (c), as interpreted by *State* v. *Garcia*, 108 Conn. App. 533, 554–55, 949 A.2d 499, cert. denied, 289 Conn. 916, 957 A.2d 880 (2008), and not under § 54-33g, as argued by Redmond, and (2) the nexus between the property and the crimes rendered an in rem forfeiture proceeding unnecessary because, under *Garcia*, that nexus allows the court to order forfeiture pursuant to § 54-36a (c).[15]

From that judgment, Redmond appealed to this court, claiming that the court improperly (1) concluded that the seized property met the statutory definition of contraband in § 54-36a and (2) disposed of the property without giving him proper notice and an opportunity to be heard. *State* v. *Redmond*, supra, 161 Conn. App. 624. We dismissed his appeal on the ground that this court lacked jurisdiction to consider these claims in a direct appeal of the criminal conviction because Redmond was not a party to the underlying proceeding. Id. In so doing, we observed that the appropriate vehicle for such claims is a writ of error. Id., 626–27. Redmond then filed this writ of error with the Supreme Court, which transferred the case to our docket pursuant to Practice Book § 65-1.[16]

In his writ of error, Redmond raises two claims. First, he argues that the court improperly ordered the forfei-

ture of the seized property under § 54-36a (c) because an in rem forfeiture proceeding under § 54-33g was required to effectuate the forfeiture. Second, Redmond argues that the order of forfeiture was improper because the court failed to provide him proper notice and an opportunity to be heard as required by § 54-33g, which requires the court to give notice to any person with an interest in property that is proposed to be forfeited on the ground that it is a nuisance as the instrumentality of a crime, and to hold a hearing on the forfeiture within six to twelve days of such notice.[17] In his claim for relief, he asks this court to reverse and set aside the April 15, 2014 decision on his motion for return of his property.

Practice Book § 72-1 (a) (1) provides that a nonparty may bring a writ of error in matters of law from the final judgment of the Superior Court where that judgment is binding on that nonparty and the nonparty is aggrieved by that judgment. Accordingly, our scope of review is circumscribed in such matters and is limited to questions of law only. See E. Prescott, Connecticut Appellate Practice & Procedure (5th Ed. 2016) § 9-1:6, p. 524. "A writ of error . . . necessarily presents a question of law. When the trial court draws conclusions of law, our review is plenary and [an appellate court] must decide whether its conclusions are legally and logically correct and find support in the facts that appear in the record." (Internal quotation marks omitted.) *Sowell* v. *DiCara*, 161 Conn. App. 102, 120, 127 A.3d 356, cert. denied, 320 Conn. 909, 128 A.3d 953 (2015). This standard of review governs both of Redmond's claims.

I

Redmond's first claim, that the court improperly ordered the forfeiture of the seized property under § 54-36a (c), hinges on his claim that this section provides the court with the authority to order the forfeiture of contraband only, including cash linked to illicit narcotics transactions, and that firearms are not contraband under the statute. He contends that § 54-36a (a) (1) defines "contraband" as "any property, the possession of which is prohibited by any provision of the general statutes," and that possession of the disputed property is not prohibited by the General Statutes. He argues that because § 54-36a (c) applies only to contraband and certain cash linked to illegal drug transactions, the court should have conducted in rem forfeiture proceedings under § 54-33g in order to effectuate the forfeiture. Proceeding under § 54-33g would have required notice of the proposed forfeiture and a hearing prior to the court's forfeiture order. Had Redmond received notice and a hearing, he asserts that the property would not have been ordered forfeited and destroyed. In light of established precedent, we disagree that § 54-36a (c) is limited to contraband and certain cash, and conclude

that the court properly acted under this section.

Section 54-36a (c) addresses the final disposition, at the conclusion of a criminal prosecution, of property that was seized by the police in connection with a criminal arrest. It provides in relevant part that "unless the court finds that such property *shall be forfeited or is contraband* . . . it shall, at the final disposition of the criminal action or as soon thereafter as is practical . . . order the return of such property to its owner within six months upon proper claim therefor." (Emphasis added.) General Statutes § 54-36a (c). The pivotal phrase in this section is that the court is not required to return the property to its owner if the court finds that the property "shall be *forfeited or is contraband* . . . ." (Emphasis added.) In *State* v. *Garcia*, supra, 108 Conn. App. 554–55, this court considered that statutory language when faced with arguments substantially the same as Redmond's arguments, and concluded that "§ 54-36a (c) empowers courts presiding over criminal actions to dispose of [seized property] . . . provided that a nexus exists between the [seized property] and the crimes charged."[18] So long as a nexus exists between the seized property and the crimes charged, it is irrelevant whether the property is contraband.

In the present case, the trial court's determination that a nexus existed between the seized weapons, ammunition, and magazine, and the crimes charged is logical and finds support in the facts that appear in the record. Additionally, Redmond has not challenged the propriety of the trial court's nexus determination. The record reflects that the defendant was selling narcotics from the residence owned by and co-occupied by Redmond, and that the weapons were found throughout this residence, some appearing to be loaded and staged for quick use, and some in proximity to narcotics. The defendant had free access to all areas of the residence, including to the weapons stored in a safe on the second floor of the residence. "Connecticut courts repeatedly have noted that [t]here is a well established correlation between drug dealing and firearms. . . . Federal courts also have recognized this fact of life." (Citations omitted; internal quotation marks omitted.) *State* v. *Clark*, 255 Conn. 268, 284, 764 A.2d 1251 (2001).[19] The defendant either possessed or had easy access to all of the weapons for use in his illicit business dealings. We, therefore, conclude that the court's determination that the requisite nexus existed between the seized firearms and the defendant's narcotics business was logical and supported by the record.[20]

## II

Redmond next argues that the court's forfeiture order was improper because it was entered without giving him proper notice and an opportunity to be heard, as required by § 54-33g.[21] Redmond's arguments concerning the requirements of § 54-33g are inapposite because,

as previously noted, the court in the present case properly ordered the forfeiture under § 54-36a (c). Section 54-36a (c) does not require the court or the state to provide formal notice to any individual that may have an interest in seized property that is to be forfeited. It requires only that, at the final disposition of a criminal action, the court "[find] that such property shall be forfeited or is contraband, or [find] that such property is a controlled drug, a controlled substance or drug paraphernalia," before it can order a forfeiture of the seized property. General Statutes § 54-36a (c).

Moreover, contrary to Redmond's claims, he was not deprived of an opportunity to be heard on the disposition of the property. Rather, the record indicates that Redmond was aware of the proposed disposition of the property and chose not to assert his claim to the property until after the final disposition of the criminal action. Practice Book § 41-13[22] provides a procedure for any person, whether a party or not, who is aggrieved by the seizure of property in the course of a criminal investigation to make a motion in the criminal action for the return of the seized property. Practice Book § 41-15[23] restricts such motions to being made during the pendency of the criminal action. Redmond's choice not to make a timely motion pursuant to Practice Book § 41-13, whatever his reasons may have been, does not render the forfeiture improper.

For the foregoing reasons, we conclude that Redmond failed to demonstrate that the trial court improperly denied his motion for the return of the seized property.

The writ of error is dismissed.

In this opinion the other judges concurred.

[1] The defendant, Patrick S. Redmond, did not participate in this writ of error. For purposes of clarity, we refer to Patrick S. Redmond as the defendant and to the plaintiff in error as Redmond.

[2] Hereinafter, all references to § 54-33g in this opinion are to the 2013 revision of the statute.

[3] Although Redmond also argues in this writ that the forfeiture order contravened the strictures of General Statutes § 54-36h, he did not raise that claim before the trial court. We, therefore, decline to review any such claims in this writ of error. See *State* v. *Pagan*, 158 Conn. App. 620, 632–33, 119 A.3d 1259 ("This court is not bound to consider claims of law not made at the trial. . . . Once counsel states the authority and ground of [her argument], any appeal will be limited to the ground asserted." [Internal quotation marks omitted.]), cert. denied, 319 Conn. 909, 123 A.3d 438 (2015).

[4] The trial court did not make any factual findings, with the exception of the finding of a nexus between the seized property and the criminal activity, in this matter because the underlying criminal trial was resolved pursuant to a plea agreement, and no evidentiary hearing was held on Redmond's motion for the return of the seized property. The facts recounted regarding the underlying criminal activity are primarily inferred from the prosecutor's summary at the sentencing hearing, to which neither the defendant nor Redmond, or their attorneys, objected. The remaining inferred facts are gleaned from statements made during the hearings on Redmond's motion for return of the property, where those statements indicate substantial agreement between the court, the state's attorney, and Redmond's attorney as to factual matters. Any instance of disagreement regarding factual matters that is apparent on the record is noted herein. See *Young* v. *Commissioner of Correction,* 104 Conn. App. 188, 190 n.1, 932 A.2d 467 (2007) ("Although

the court made no findings of fact on the record . . . it is clear from the transcript of the hearing and from the ruling of the court [what the relevant factual issues are] . . . . From the transcript of the hearing, we are able to infer the facts on which the court's decision appears to have been predicated."), cert. denied, 285 Conn. 907, 942 A.2d 416 (2008); *State* v. *MacNeil*, 28 Conn. App. 508, 515, 613 A.2d 296, cert. denied, 224 Conn. 901, 615 A.2d 1044 (1992) (Appellate Court may resort to evidence in the record that supports trial court's rulings when trial court does not make detailed factual findings on the record in support of its decision).

[5] Five of the weapons were handguns and the remainder were various types of long guns, including rifles and shotguns.

[6] The police also seized other property that is not at issue here.

[7] See *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[8] The defendant was charged with three counts of illegal transfer of a pistol or revolver in violation of General Statutes (Rev. to 2013) § 29-33; one count of attempted sale of a controlled substance in violation of General Statutes §§ 53a-49 and 21a-277 (b); one count of use of drug paraphernalia in violation of General Statutes § 21a-267 (a); one count of possession with intent to sell in violation of § 21a-277 (b); one count of possession of narcotics in violation of General Statutes (Rev. to 2013) § 21a-279 (a); and, one count of possession of a hallucinogen in violation of § 21a-279 (b).

[9] Although the record supplied by the defendant does not contain an express statement from DiPentima concerning this dual representation, it contains enough information to infer that the court and the state viewed his role as representing both the defendant and Redmond due to the conduct or statements of DiPentima. We further note that representation by an attorney is not limited to appearances in court. Although it is true that the defendant's plea deal ultimately cost Redmond his weapons, his son was permitted to plead to fewer charges and received a significantly more lenient sentence than was likely had the case gone to trial. This plea agreement may not have served Redmond's interest in the weapons, but it did serve his interest in the welfare of his son.

[10] See *North Carolina* v. *Alford*, 400 U.S. 25, 37, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[11] Hereinafter, all references to § 29-33 in this opinion are to the 2013 revision of the statute.

[12] Redmond has not provided this court with the transcript of the defendant's May 31, 2013 plea hearing. It therefore is not possible to determine precisely what transpired beyond the summary provided on the record by the state's attorney at the December 10, 2013 sentencing hearing. In the absence of an objection by the defendant or a correction by the court, we presume that the state's summary at sentencing was accurate.

[13] This maximum sentence consists of consecutive sentences of seven years of imprisonment on the drug charge and five years of imprisonment on the weapons charge.

[14] This additional time consists of consecutive maximum sentences allowed by the General Statutes of: Five years of imprisonment on each of the two counts of illegal transfer of a pistol or revolver in violation of § 29-33; seven years of imprisonment on one count of attempted sale of a controlled substance in violation of General Statutes § 53a-49 and § 21a-277 (b); five years of imprisonment on one count of possession of a hallucinogen in violation of General Statutes (Rev. to 2013) § 21a-279 (b); three months of imprisonment on one count of use of drug paraphernalia in violation of General Statutes § 21a-267 (a); and, seven years of imprisonment on one count of possession of narcotics in violation of § 21a-279 (a).

[15] The state also argues that the court articulated a third ground for denying the motion, namely, that Redmond had waived his right to challenge the forfeiture because he had not made a timely motion for the return of the property prior to the court rendering final judgment in the criminal action. Although the record reveals that the trial court discussed this issue with the parties, it is not clear that the trial court considered this a ground for denying the motion. Indeed, the court expressed doubt about whether waiver was a relevant consideration given its clear authority under § 54-36a (c) and *Garcia*, stating that "I'm not even sure if waiver is required based on the *Garcia* case." Neither party sought an articulation from the trial court, and we cannot conclude on the record before us that the trial court considered waiver as a ground for the denial.

[16] We note that we are considering Redmond's writ of error although it was not filed within twenty days of the judgment, as required by Practice

Book § 72-3 (a), because of the unusual circumstances of this matter and because our Supreme Court elected to transfer this matter to this court under Practice Book § 65-1, rather than dismissing it pursuant to its authority under Practice Book § 72-3 (a), which provides in relevant part that the Supreme Court may dismiss a writ of error that is untimely brought without cause. The state did not move either the Supreme Court or this court to dismiss this writ as untimely. Additionally, when Redmond brought his direct appeal, we dismissed it because he was a nonparty to the criminal matter, and we stated that he should have raised his claims through a writ of error. Following this suggestion, Redmond initiated the writ of error six days later on December 14, 2015, which is within the twenty day period provided by Practice Book § 72-3 (a). Given these circumstances, it is appropriate that we use our discretion to hear an untimely writ of error. See *State* v. *Reid*, 277 Conn. 764, 777–78, 894 A.2d 963 (2006) (failure to take timely appeal or bring timely writ of error renders the matter voidable, but not void, and court has discretion to hear matter).

[17] General Statutes (Rev. to 2013) § 54-33g provides in relevant part: "(a) When any property believed to be possessed, controlled, designed or intended for use or which is or has been used or which may be used as a means of committing any criminal offense . . . has been seized as a result of a lawful arrest or lawful search, which the state claims to be a nuisance and desires to have destroyed or disposed of . . . the . . . court issuing the warrant or before whom the arrested person is to be arraigned shall, within ten days after such seizure, cause to be left with the owner of, and with any person claiming of record a bona fide mortgage, assignment of lease or rent, lien or security interest in, the property so seized, or at his [or her] usual place of abode, if he [or she] is known, or, if unknown, at the place where the property was seized, a summons notifying the owner and any such other person claiming such interest and all others whom it may concern to appear before such . . . court, at a place and time named in such notice, which shall be not less than six nor more than twelve days after the service thereof. Such summons may be signed by a clerk of the court or his [or her] assistant and service may be made by a local or state police officer. It shall describe such property with reasonable certainty and state when and where and why the [property] was seized.

"(b) If the owner of such property or any person claiming any interest in the [property] appears, he [or she] shall be made a party defendant in such case. Any state's attorney or assistant state's attorney may appear and prosecute such complaint and shall have the burden of proving all material facts by clear and convincing evidence.

"(c) If the . . . court finds the allegations made in such complaint to be true . . . [the court] shall render judgment that such property is a nuisance and order the [property] to be destroyed or disposed of . . . .

"(d) If the . . . court finds the allegations not to be true . . . or that [the property] is the property of a person [who is] not a defendant, [the court] shall order the property returned to the owner forthwith and the party in possession of such property pending such determination shall be responsible and personally liable for such property from the time of seizure and shall immediately comply with such order. . . ."

[18] We note that the *Garcia* decision somewhat imprecisely uses the word "contraband" in explaining the court's authority under § 54-36a (c), which potentially has led to a misunderstanding of the scope of the court's authority to order forfeiture under this section. It is clear, however, from the court's analysis that the portion of the statute that it was construing included the entire phrase "shall be forfeited *or* is contraband . . . ." (Emphasis added.) *State* v. *Garcia*, supra, 108 Conn. App. 551. Decisions subsequent to *Garcia* show that the *Garcia* holding is understood to not be limited to contraband, but rather applicable to any seized property, other than stolen property, with a nexus to the crimes charged. See, e.g., *State* v. *Perez*, 173 Conn. App. 40, 51, 162 A.3d 76 (2017) (replacing phrase "seized contraband" in quotation of court's holding in *Garcia* with "seized [property]").

[19] This connection is considered strong enough that our Supreme Court has held that, in narcotics investigations, this link satisfies the reasonable suspicion requirement for an investigatory search specifically for weapons under *Terry* v. *Ohio*, 392 U.S. 1, 27, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). See *State* v. *Clark*, supra, 255 Conn. 284.

[20] In addition, we note that Redmond's quest for in rem proceedings runs contrary to a clear distinction between seized property and unseized property in our statutes governing the forfeiture of property. "[S]eized [property] does not require in rem forfeiture proceedings, as unseized property does."

(Internal quotation marks omitted.) *State* v. *Perez*, 173 Conn. App. 40, 51, 162 A.3d 76 (2017). "The distinction in Connecticut statutes delineating the disposition of property seized as evidence, pursuant to § 54-36a, from property subject to [in rem] forfeiture proceedings . . . leads us to conclude that seized [property] does not require in rem forfeiture proceedings, as unseized property does. [A] careful reading of all of the relevant provisions of [the in rem forfeiture statutes], as well as a search of [the] legislative history, reveal[s] that [the statutes were] only intended to protect from forfeiture that property that has not yet been seized by the state . . . . This exemption was not intended, however, to extend to property that has been seized simultaneously with drugs, incident to a drug sales arrest." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Garcia*, supra, 108 Conn. App. 553.

[21] In his appellate brief, Redmond also alludes to certain due process concerns. He has not, however, briefed a separate due process claim under either the federal or state constitutions. Rather, his argument references due process concerns as support for his position that, because in rem forfeiture proceedings are disfavored in Connecticut, the notice and hearing requirements of the statutes should be strictly construed. He does not argue that the trial court's proceeding under § 54-36a (c), with no notice or hearing required or given, is itself a due process violation. The scent of such a claim nonetheless hovers in this case. "[T]he United States Supreme Court [has] recognized the harshness of many forfeiture statutes but noted only two instances in which such statutes might violate substantive due process. . . . [I]t would be difficult to reject the constitutional claim of an owner whose property subjected to forfeiture had been taken from him without his privity or consent [for it to be used in the crime]. . . . Similarly, the same might be said of an owner who proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property." (Internal quotation marks omitted.) *State* v. *Connelly*, 194 Conn. 589, 593 n.4, 483 A.2d 1085 (1984), quoting *Calero-Toledo* v. *Pearson Yacht Leasing Co.*, 416 U.S. 663, 680–90, 94 S. Ct. 2080, 40 L. Ed. 2d 452 (1974). The record in the present case demonstrates that neither situation would apply to Redmond, who allowed the defendant to have free access to the weapons, was aware that the defendant was selling narcotics from Redmond's home in which the weapons were stored, and failed to take reasonably action to prevent his weapons from being used in furtherance of the defendant's narcotics trade.

[22] Practice Book § 41-13 provides in relevant part that "[a] person aggrieved by a . . . seizure may make a motion to the judicial authority who has jurisdiction of the case, or if such jurisdiction has not yet been invoked, then to the judicial authority who issued the warrant or to the court in which the case is pending, for the return of specific items of property and to suppress their use as evidence on the grounds that: (1) [t]he property was illegally seized without a warrant under circumstances requiring a warrant; (2) [t]he warrant is insufficient on its face; (3) [t]he property seized is not that described in the warrant; (4) [t]here was not probable cause for believing the existence of the grounds on which the warrant was issued; or (5) [t]he warrant was illegally executed."

[23] Practice Book § 41-15 provides in relevant part that such motion must be made before trial, unless "the defendant or other moving party was not aware of the grounds of the motion, in which case such motion may be made at any time during the trial or the pendency of any proceeding. The judicial authority in its discretion may entertain such a motion at any time."

———————————————————