******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

*Syllabus*

The plaintiff sought to recover damages from the defendant attorney for,
inter alia, legal malpractice in connection with the defendant's represen-
tation of the plaintiff in a federal criminal case involving certain fraudu-
lent real estate transactions. The plaintiff entered into a plea agreement
in the federal case. The plaintiff's three count complaint alleged legal
malpractice, breach of fiduciary duty and a violation of the Connecticut
Unfair Trade Practices Act (CUTPA) (§ 42-110a et seq.). As to the legal
malpractice and breach of fiduciary duty claims, the plaintiff alleged
that he was required to pay an excessive amount in restitution as part
of his sentence in the federal case as a result of the defendant's deficient
representation of him. As to the CUTPA claim, the plaintiff alleged that
he was compelled to retain the defendant as his criminal defense counsel
in lieu of another attorney as a result of certain statements that the
defendant made to him that were untrue, misleading and deceptive. The
trial court granted a motion to strike filed by the defendant as to the
plaintiff's CUTPA claim, and a motion for summary judgment filed by
the defendant as to the legal malpractice and breach of fiduciary duty
claims, from which the plaintiff appealed to this court. *Held*:

1. The trial court properly granted the defendant's motion to strike the
plaintiff's CUTPA claim; pursuant to Connecticut case law, representa-
tions made by an attorney to a prospective client regarding the attorney's
expertise and/or competence do not relate to the entrepreneurial aspects
of the practice of law and therefore are outside of the ambit of CUTPA;
moreover, if the defendant breached the governing standard of care and
the plaintiff suffered harm as a result, then the plaintiff's remedy would
be to bring an action claiming legal malpractice, not a violation of
CUTPA.

2. The trial court lacked subject matter jurisdiction over the plaintiff's legal
malpractice and breach of fiduciary duty claims because they were not
ripe for review pursuant to *Taylor* v. *Wallace* (184 Conn. App. 43): to
succeed on those claims, the plaintiff would have had to demonstrate
that the defendant's alleged conduct led to the imposition of an errone-
ous restitution order by the federal sentencing court, which would neces-
sarily have undermined the validity of his sentence, and such a collateral
attack on the plaintiff's sentence is not permissible because, as long as
a plaintiff's conviction or sentence remains valid, it cannot be vitiated
indirectly by a tort action commenced against counsel; accordingly, as
to the summary judgment rendered in the defendant's favor on these
claims, the form of the judgment was improper because a judgment
of dismissal must be rendered when the court lacks subject matter
jurisdiction.

Argued January 12—officially released July 6, 2021

*Procedural History*

Action to recover damages for, inter alia, legal mal-
practice, and for other relief, brought to the Superior
Court in the judicial district of New Haven, where the
court, *Abrams, J.*, granted the defendant's motion to
strike; subsequently, the court, *Abrams, J.*, granted the
defendant's motion for summary judgment and ren-
dered judgment thereon, from which the plaintiff
appealed to this court. *Reversed in part*; *judgment
directed.*

*Lawrence Dressler*, self-represented, the appellant
(plaintiff).

*Michael R. Keller*, with whom were *Eva M. Kolstad*, and, on the brief, *James L. Brawley*, for the appellee (defendant).

*Opinion*

MOLL, J. The plaintiff, Lawrence Dressler, appeals from the judgment of the trial court rendered in favor of the defendant, Eugene Riccio. On appeal, the plaintiff claims that the court improperly granted the defendant's (1) motion to strike count three of the plaintiff's amended complaint asserting a violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and (2) motion for summary judgment as to counts one and two of the plaintiff's amended complaint asserting legal malpractice and breach of fiduciary duty claims, respectively. We conclude that the court properly granted the defendant's motion to strike the plaintiff's CUTPA claim set forth in count three. As for the summary judgment rendered in the defendant's favor on counts one and two, the defendant argues, as an alternative ground for affirmance, that the court lacked subject matter jurisdiction over those claims because they are not ripe for review pursuant to *Taylor* v. *Wallace*, 184 Conn. App. 43, 47–52, 194 A.3d 343 (2018). We agree with the defendant's ripeness argument; however, rather than affirming the summary judgment on that alternative ground, we conclude that the judgment is improper in form because the court's lack of subject matter jurisdiction over counts one and two necessitates a judgment of dismissal with respect to those counts. Accordingly, we affirm in part and reverse in part the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. In February, 2013, in relation to certain fraudulent real estate transactions, the plaintiff was indicted by a federal grand jury on a charge of conspiracy to commit bank, mail, and wire fraud in violation of 18 U.S.C. § 1349 (2006).[1] Initially, Attorney John R. Williams represented the plaintiff as his criminal defense counsel. Subsequently, the plaintiff retained the defendant, who filed an appearance on the plaintiff's behalf in the federal criminal case on February 22, 2013, the day of the plaintiff's arraignment. In October, 2013, after entering into a plea agreement, the plaintiff pleaded guilty to the conspiracy charge. In March, 2014, the plaintiff was sentenced to twenty months of incarceration followed by three years of supervised release with special conditions. Additionally, as part of his sentence, the plaintiff was ordered to pay, inter alia, $403,450.75 as restitution.

On July 14, 2017, the plaintiff commenced the present action against the defendant. Subsequently, the plaintiff filed an amended three count complaint (i.e., the operative complaint). Count one asserted legal malpractice. Count two asserted breach of fiduciary duty. Both counts one and two were predicated on allegations that, inter alia, the plaintiff was required to pay an excessive amount in restitution as a result of the defendant's

deficient representation in the federal criminal case. Count three asserted a violation of CUTPA and was based on allegations that the plaintiff was compelled to retain the defendant as his criminal defense counsel in lieu of Attorney Williams as a result of certain statements that the defendant made to him that were untrue, misleading, and deceptive.

On January 16, 2019, the defendant filed a motion to strike count three, claiming that the plaintiff's CUTPA claim was legally insufficient because, inter alia, the defendant's alleged conduct did not relate to the entrepreneurial aspects of the practice of law. On February 5, 2019, the plaintiff filed a memorandum of law in opposition. On February 19, 2019, the defendant filed a reply. Thereafter, with leave of the court, the plaintiff filed a surreply. On May 17, 2019, the court granted the motion to strike, concluding that the allegations pleaded by the plaintiff in support of count three did not concern the entrepreneurial aspects of the practice of law and, thus, were legally insufficient to state a viable CUTPA claim.

On April 15, 2019, before the court had stricken the CUTPA claim, the defendant filed a motion for summary judgment, accompanied by a supporting memorandum of law and exhibits, directed to the plaintiff's amended complaint in its entirety. The defendant asserted that (1) pursuant to *Taylor* v. *Wallace*, supra, 184 Conn. App. 43, the plaintiff's claims were not ripe for review, (2) the applicable statutes of limitations had expired as to all of the plaintiff's claims, and (3) the plaintiff could not establish a prima facie case as to his legal malpractice and breach of fiduciary duty claims because he had failed to disclose an expert witness. On May 30, 2019, the plaintiff filed a memorandum of law, accompanied by exhibits, in opposition to the motion for summary judgment. On June 14, 2019, the defendant filed a reply. On September 9, 2019, the court granted the motion for summary judgment as to the plaintiff's legal malpractice and breach of fiduciary duty claims in counts one and two, respectively, solely on the basis that they were statutorily time barred and that no genuine issue of material fact existed to toll the applicable statute of limitations. The court did not address the defendant's other claims raised in support of his motion for summary judgment. This appeal followed. Additional facts and procedural history will be set forth as necessary.

I

The plaintiff first claims that the trial court improperly granted the defendant's motion to strike count three of the plaintiff's amended complaint asserting a violation of CUTPA.[2] We disagree.

"Because a motion to strike challenges the legal sufficiency of a pleading and, consequently, requires no factual findings by the trial court, our review of the

court's ruling . . . is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Internal quotation marks omitted.) *Karagozian* v. *USV Optical, Inc.*, 335 Conn. 426, 433–34, 238 A.3d 716 (2020).

The following additional facts are relevant to our disposition of the plaintiff's claim. In support of his CUTPA claim, the plaintiff alleged in relevant part as follows. On or about February 22, 2013, the plaintiff hired the defendant to defend him in the federal criminal case in lieu of his prior counsel, Attorney Williams. During a meeting between the plaintiff and the defendant that preceded the defendant's retention as counsel, the defendant "aggressively solicited the plaintiff by making disparaging remarks about [Attorney Williams], in one or more of the following ways: (a) the defendant told the plaintiff that [Attorney Williams] was a 'flame thrower' because he sued the government frequently and would thereby harm the plaintiff's chances of reaching a favorable resolution with the federal government; (b) the defendant told the plaintiff that [Attorney Williams] had already caused considerable damage to the plaintiff's case in that the plaintiff was like a patient on the operating table with his guts hanging out and it was up to the defendant to put the plaintiff back together; [and] (c) the defendant had a close relationship with the federal government which would work in the plaintiff's favor, as opposed to [Attorney Williams], who had a bad relationship with the federal government." The plaintiff further alleged that "[t]he statements made to the plaintiff were misleading, untrue and deceptive and meant to cause the plaintiff considerable distress and force the plaintiff to hire the defendant to defend him rather than [Attorney Williams], which the plaintiff ultimately did."

In moving to strike the plaintiff's CUTPA claim, the defendant argued in relevant part that the claim was insufficient as a matter of law because the plaintiff had failed to allege conduct by the defendant that implicated the entrepreneurial aspects of the practice of law, such as the defendant's billing practices or his manner of soliciting clients. In opposition to the motion to strike, the plaintiff argued that, in making the alleged statements to the plaintiff, the defendant was soliciting the plaintiff's business and, thus, was engaged in entrepreneurial activity. The court concluded that the defendant's alleged conduct did not pertain to the entrepreneurial aspects of the practice of law and, accordingly, granted the defendant's motion to strike the CUTPA claim.

On appeal, the plaintiff claims that the court improp-

erly granted the defendant's motion to strike the CUTPA claim because the defendant's alleged statements to the plaintiff during their meeting constituted solicitation of business and, therefore, implicated the entrepreneurial aspects of the practice of law. We are not persuaded.

Pursuant to CUTPA, "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." General Statutes § 42-110b (a). Our Supreme Court has stated that, "in general, CUTPA applies to the conduct of attorneys. . . . The statute's regulation of the conduct of any trade or commerce does not totally exclude all conduct of the profession of law. . . . Nevertheless, [our Supreme Court has] declined to hold that every provision of CUTPA permits regulation of every aspect of the practice of law . . . . [Our Supreme Court has] stated, instead, that, only the entrepreneurial aspects of the practice of law are covered by CUTPA." (Citations omitted; internal quotation marks omitted.) *Suffield Development Associates Ltd. Partnership* v. *National Loan Investors, L.P.*, 260 Conn. 766, 781, 802 A.2d 44 (2002).

"[A]lthough all lawyers are subject to CUTPA, most of the practice of law is not. The entrepreneurial exception is just that, a specific exception from CUTPA immunity for a well-defined set of activities—advertising and bill collection, for example. See *Haynes* v. *Yale-New Haven Hospital*, 243 Conn. 17, 34–38, 699 A.2d 964 (1997) (reasoning that practice of law and medicine may give rise to CUTPA claims only for entrepreneurial aspects, such as solicitation of business and billing, and not for claims involving issues of competence and strategy). It is not a catch-all provision intended to subject any arguably improper attorney conduct to CUTPA liability." (Internal quotation marks omitted.) *Suffield Development Associates Ltd. Partnership* v. *National Loan Investors, L.P.*, supra, 260 Conn. 782. "Our CUTPA cases illustrate that the most significant question in considering a CUTPA claim against an attorney is whether the allegedly improper conduct is part of the attorney's professional representation of a client or is part of the entrepreneurial aspect of practicing law." Id., 781.

Our research has revealed limited appellate authority in this state examining the contours of the entrepreneurial exception to CUTPA immunity with respect to conduct that constitutes solicitation of business. Nevertheless, our resolution of this issue is specially guided by three of our Supreme Court's decisions.

First, in *Beverly Hills Concepts, Inc.* v. *Schatz & Schatz, Ribicoff & Kotkin*, 247 Conn. 48, 717 A.2d 724 (1998), the plaintiff asserted various claims, including legal malpractice and a violation of CUTPA, against several attorneys and a law firm. Id., 50. Following a bench trial, the trial court rendered judgment in the

defendants' favor, inter alia, on the CUTPA claim. Id., 50–51. An appeal and a cross appeal were filed with this court and, thereafter, transferred to our Supreme Court. Id., 51. As to the CUTPA claim, our Supreme Court concluded that, as a matter of law, "CUTPA [did] not apply to the facts of th[e] case." Id., 79. Of significant import, the record in that case supported a finding that one of the defendant attorneys had represented to the plaintiff that the defendant law firm "possessed expertise in the field of franchising, and that the firm was well qualified to handle the plaintiff's legal affairs." Id., 52. By concluding that, as a matter of law, CUTPA was inapplicable to the facts of that case, it necessarily follows that our Supreme Court also concluded that an attorney's representation to a prospective client during the retention process regarding the expertise of the attorney, and/or the attorney's law firm, falls outside of the scope of CUTPA.

Second, in *Haynes* v. *Yale-New Haven Hospital*, supra, 243 Conn. 17, the plaintiff asserted claims of medical malpractice and a violation of CUTPA against a hospital. Id., 21. In support of the CUTPA claim, the plaintiff alleged that, although it was certified as a major trauma center, the defendant hospital had failed to meet the applicable standards of care for such a center. Id. The trial court rendered summary judgment in favor of the defendant hospital on the medical malpractice and CUTPA claims. Id., 22. The plaintiff appealed to this court, and, subsequently, our Supreme Court transferred the appeal to itself. Id., 19 n.3. As to the CUTPA claim, our Supreme Court affirmed the summary judgment, stating in relevant part that "[b]y holding itself out as a major trauma center . . . [the defendant hospital] was representing to the public that it would meet the applicable standards of competency for a major trauma center. We conclude that this representation is simply what all physicians and health care providers represent to the public—that they are licensed and impliedly that they will meet the applicable standards of care. If they fail to meet the standard of care and harm results, the remedy is not one based upon CUTPA, but upon malpractice." Id., 39.

Third, in *Janusauskas* v. *Fichman*, 264 Conn. 796, 826 A.2d 1066 (2003), the plaintiff asserted, inter alia, claims of medical malpractice and a violation of CUTPA against the defendant, an ophthalmologist. Id., 799, 801. The facts in that case reflected that, following surgery performed by the defendant to correct the plaintiff's nearsightedness, the plaintiff experienced various vision problems notwithstanding that the defendant had (1) advertised in a brochure that he was " 'one of the country's leading doctors in his field' " and (2) represented to the plaintiff that he had successfully treated other individuals with severe nearsightedness and believed that he could improve the plaintiff's vision. Id., 799, 810–11. Following the close of the plaintiff's

case-in-chief, the defendant moved for a directed verdict on the CUTPA claim, which the trial court granted. Id., 802. This court and our Supreme Court affirmed the directed verdict on the CUTPA claim. Id., 798. With respect to the defendant's brochure advertisement, citing *Haynes*, our Supreme Court concluded that the advertisement "simply represent[ed] to the public that the defendant [would] meet the standard of care applicable to a 'leading doctor.' If the defendant fail[ed] to meet this standard of care and harm result[ed], the remedy would be based upon malpractice, and not upon CUTPA." Id., 810. With respect to the defendant's representations to the plaintiff, our Supreme Court stated that "[t]hese representations are of the sort that physicians and other health care providers may make to their patients within the course of treatment. They are representations that a reasonable patient may find material in determining whether to undergo a contemplated course of therapy . . . . As with representations regarding the standard of care, if these representations fail to satisfy the requirement of informed consent, and harm results, the remedy would be based upon malpractice, and not upon CUTPA." Id., 811.

We construe the three aforementioned cases[3] to instruct that representations made by an attorney to a prospective client regarding the attorney's expertise and/or competence do not relate to the entrepreneurial aspects of the practice of law. Thus, such representations are outside of the ambit of CUTPA.

Applying this rationale to the present case, we conclude that, as a matter of law, the plaintiff failed to plead a viable CUTPA claim. In support of the CUTPA claim, the plaintiff alleged that, during the meeting between the parties, the defendant stated that (1) in contrast to Attorney Williams, he had a close relationship with the federal government, "which would work in the plaintiff's favor," and (2) notwithstanding the "considerable damage" caused by Attorney Williams, he was capable of salvaging the plaintiff's case.[4] The allegations that the defendant made disparaging remarks about Attorney Williams cannot be isolated from the allegations that the defendant made comments highlighting his expertise and/or competence; rather, the former accentuate the latter. These alleged statements constituted representations by the defendant to the plaintiff that he was competent to handle the plaintiff's criminal matter. If the defendant breached the governing standard of care and the plaintiff suffered harm as a result, then the plaintiff's remedy would be to bring an action claiming legal malpractice,[5] not a violation of CUTPA.

In sum, we conclude that the court properly granted the defendant's motion to strike count three of the plaintiff's amended complaint asserting a violation of CUTPA.[6]

## II

The plaintiff next claims that the trial court improperly granted the defendant's motion for summary judgment as to counts one and two asserting legal malpractice and breach of fiduciary duty, respectively, on the ground that they were time barred. The defendant argues, as an alternative ground for affirmance, that the court lacked subject matter jurisdiction over those tort claims because they are not ripe for review pursuant to *Taylor* v. *Wallace*, supra, 184 Conn. App. 43. We agree with the defendant's ripeness argument.[7]

As a preliminary matter, we note that, "[o]rdinarily, we would consider the defendant's alternat[ive] grounds for affirmance only after finding merit in at least one of the claims raised on appeal. [O]nce the question of lack of jurisdiction of a court is raised, [however, it] must be disposed of no matter in what form it is presented . . . and the court must fully resolve it before proceeding further with the case." (Internal quotation marks omitted.) *Dow & Condon, Inc.* v. *Brookfield Development Corp.*, 266 Conn. 572, 578–79, 833 A.2d 908 (2003); see also *Taylor* v. *Wallace*, supra, 184 Conn. App. 47 ("Subject matter jurisdiction [implicates] the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . . The objection of want of jurisdiction may be made at any time . . . [a]nd the court or tribunal may act on its own motion, and should do so when the lack of jurisdiction is called to its attention. . . . The requirement of subject matter jurisdiction cannot be waived by any party and can be raised at any stage in the proceedings." (Internal quotation marks omitted.)). Thus, as a threshold issue, we must consider the defendant's argument that the court lacked subject matter jurisdiction to entertain the plaintiff's tort claims because they are not ripe for review.[8] See *Dow & Condon, Inc.* v. *Brookfield Development Corp.*, supra, 579 (considering, "as a threshold issue," defendant's claimed alternative ground for affirmance that plaintiff lacked standing, and, therefore, trial court lacked subject matter jurisdiction).

"[J]usticiability comprises several related doctrines . . . [including ripeness]. . . . A case that is nonjusticiable must be dismissed for lack of subject matter jurisdiction. . . . [B]ecause an issue regarding justiciability raises a question of law, our appellate review [of the ripeness of a claim] is plenary. . . . [T]he rationale behind the ripeness requirement is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . . Accordingly, in determining whether a case is ripe, a trial court must be satisfied that the case before [it] does not present a hypothetical injury or a claim

contingent [on] some event that has not and indeed may never transpire." (Internal quotation marks omitted.) *Taylor* v. *Wallace*, supra, 184 Conn. App. 47–48.

Counts one and two of the plaintiff's amended complaint asserted legal malpractice and breach of fiduciary duty, respectively. As to legal malpractice, "[i]n general, the plaintiff . . . must establish: (1) the existence of an attorney-client relationship; (2) the attorney's wrongful act or omission; (3) causation; and (4) damages. . . . [T]he plaintiff typically proves that the defendant attorney's professional negligence caused injury to the plaintiff by presenting evidence of what would have happened in the underlying action had the defendant not been negligent." (Internal quotation marks omitted.) Id., 48. As to breach of fiduciary duty, the plaintiff must establish: "[1] [t]hat a fiduciary relationship existed which gave rise to . . . a duty of loyalty . . . an obligation . . . to act in the best interests of the plaintiff, and . . . an obligation . . . to act in good faith in any matter relating to the plaintiff; [2] [t]hat the defendant advanced his or her own interests to the detriment of the plaintiff; [3] [t]hat the plaintiff sustained damages; [and] [4] [t]hat the damages were proximately caused by the fiduciary's breach of his or her fiduciary duty." (Internal quotation marks omitted.) *Chioffi* v. *Martin*, 181 Conn. App. 111, 138, 186 A.3d 15 (2018).

The defendant's ripeness argument is premised on this court's holding in *Taylor* v. *Wallace*, supra, 184 Conn. App. 47–52. In *Taylor*, the plaintiff brought a legal malpractice action against the defendant, who was the plaintiff's appointed counsel in a prior habeas action, alleging that the defendant had provided him with deficient representation. Id., 45–46. Additionally, the plaintiff alleged that the defendant had defrauded the state. Id., 46. At the time that he had filed the legal malpractice action, the plaintiff was serving a twenty-five year term of incarceration stemming from a murder conviction. Id., 45, 48. The conviction remained intact notwithstanding that the plaintiff had filed numerous petitions seeking postconviction relief, including a habeas petition that was still pending at the time of the legal malpractice action. Id., 45, 48–49. The defendant moved to dismiss the plaintiff's complaint, asserting that the legal malpractice claim was barred by statutory immunity and that the plaintiff lacked standing to pursue his claim of fraud. Id., 46. The trial court agreed with the defendant on both grounds and dismissed the complaint. Id.

The plaintiff appealed from the judgment of dismissal. Id. For the first time on appeal, the defendant argued that the trial court lacked subject matter jurisdiction over the plaintiff's legal malpractice claim because it was not ripe for review. Id., 47. More particularly, "[r]elying to a degree on *Heck* v. *Humphrey*, [512 U.S. 477, 486–87, 114 S. Ct. 2364, 129 L. Ed. 2d 383

(1994)], the defendant suggest[ed] that th[e] case [was] not ripe for adjudication because (1) a habeas corpus action [was] pending, and sound policy considerations militate[d] against the possibility of inconsistent resolutions arising out of the same transaction; (2) the injury resulting from [the] alleged professional negligence in [that] instance [was] incarceration, and, as the plaintiff remain[ed] validly incarcerated in any event, any consideration of damages would invoke a hypothetical inquiry; and (3) the holding of [*Heck*] should be adopted by this court." (Footnote omitted.) *Taylor* v. *Wallace*, supra, 184 Conn. App. 49.

This court proceeded to examine *Heck*, in which "a prisoner brought an action pursuant to 42 U.S.C. § 1983 alleging that unlawful procedures had led to his arrest, that exculpatory evidence had knowingly been destroyed, and that unlawful identification procedures had been used at this trial. *Heck* v. *Humphrey*, supra, 512 U.S. 478–79. He claimed monetary relief and did not seek release from custody. Id., 479. His conviction had been affirmed and a federal habeas petition had been denied. Id. The United States Court of Appeals for the Seventh Circuit had affirmed the District Court's dismissal of the plaintiff's action, reasoning that, '[i]f, regardless of the relief sought, the plaintiff [in a federal civil rights action] is challenging the legality of his conviction, so that if he won his case the state would be obliged to release him even if he hadn't sought that relief, the suit is classified as an application for habeas corpus and the plaintiff must exhaust his state remedies, on pain of dismissal if he fails to do so.' . . . Id., 479–80.

"The United States Supreme Court affirmed, although on slightly different reasoning. Id., 490. It began its analysis with a discussion of the common law of torts, and analogized the circumstance of the case before it to malicious prosecution: an element of the cause of action under the common law is a favorable outcome of the underlying criminal case against the plaintiff. Id., 484. The element was required in order to avoid inconsistent resolutions and collateral attacks on convictions. Id., 484–85.

"The court concluded 'that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid*, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus . . . . A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the [trial] court must consider

whether a judgment in favor of the plaintiff would necessarily imply the invalidity of this conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.' . . . Id., 486–87. The court noted that the injury of being convicted and imprisoned is not compensable under § 1983 unless the conviction has been overturned. Id., 487 n.7.'' (Emphasis in original.) *Taylor* v. *Wallace*, supra, 184 Conn. App. 49–51.

This court then stated that it "agree[d] with the policy enunciated in *Heck*: [I]f success in a tort action would necessarily imply the invalidity of a conviction, the action is to be dismissed unless the underlying conviction has been invalidated. . . . The rationale in *Heck* is similar to other limitations in our tort law. Malicious prosecution, of course, requires as an element a favorable outcome of the underlying prosecution. . . . A tort case is not ripe for adjudication if resolution of an unresolved underlying case is necessary for reliable adjudication. . . . Principles of issue preclusion bar collateral attack on a judgment.'' (Citations omitted.) Id., 51. This court also cited favorably to *Tierinni* v. *Coffin*, Superior Court, judicial district of Tolland, Docket No. CV-14-5005868-S (May 21, 2015) (60 Conn. L. Rptr. 450), a Superior Court decision that "reasoned that an incarcerated prisoner's complaint alleging legal malpractice should be dismissed. The court observed that the extant claim of ineffective assistance of counsel in a habeas action and his claim of legal malpractice in the case sub judice arose from the same set of facts; the tort claim, then, was not ripe for adjudication. Id., 453. The court reasoned that if it were 'to adjudicate the plaintiff's claim during the pendency of the plaintiff's habeas petition, there is a risk that [the] court could determine the defendant's performance was insufficient while the habeas court determines it was sufficient, or vice versa.' Id. Further, '[b]ecause an invalidation of the underlying criminal matter through the plaintiff's pending [habeas] petition is a necessary precursor to this legal malpractice claim . . . the plaintiff's legal malpractice claim has not yet accrued . . . .' Id.'' *Taylor* v. *Wallace*, supra, 184 Conn. App. 51–52.

This court ultimately agreed with the defendant's ripeness argument, stating that "the plaintiff has been convicted and that conviction has withstood a number of attacks. For so long as the conviction stands, an action collaterally attacking the conviction may not be maintained.'' (Footnote omitted.) Id., 52. In reaching its decision, this court rejected the plaintiff's argument that he was "not attacking the conviction, but [was] merely seeking monetary damages,'' observing that "[o]ne difficulty with his position is that the injury, a necessary element in a tort action, is the conviction. To prove his malpractice action, he presumably would have to prove that he would not have sustained the

injury had professional negligence not occurred. Thus, a successful result in this case would necessarily imply that the conviction was improper. Inconsistency of judgments is avoided by the requirement that the conviction first be vacated." Id., 52 n.5; see also id., 49 n.4 ("[w]e do not see any reasonable scenario of recovery . . . that does not necessarily undermine the validity of the conviction").

In the present case, relying on *Taylor*, the defendant argues that the plaintiff's legal malpractice and breach of fiduciary duty claims are not ripe for adjudication because (1) the injury complained of by the plaintiff is his conviction, (2) the plaintiff's conviction remains undisturbed, and (3) a successful result on the plaintiff's tort claims would necessarily undermine the validity of his conviction. We agree with the defendant's ripeness argument, with one caveat. The plaintiff's alleged injury with respect to his tort claims is not his *conviction*, but rather his *sentence*—more specifically, the restitution component of his sentence.[9] Although the purported injury at issue in *Taylor* was a conviction, we perceive no basis not to extend the reasoning in *Taylor* to cases in which the injury complained of by a plaintiff is his or her sentence. See *Heck* v. *Humphrey*, supra, 512 U.S. 487 (noting that "when a state prisoner seeks damages in a § 1983 suit, the [D]istrict [C]ourt must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction *or* sentence" (emphasis added)); see also *Kraklio* v. *Simmons*, 909 N.W.2d 427, 439 (Iowa 2018) (holding that "a criminal defendant suing his defense lawyer over a sentencing error must obtain postjudgment relief on the sentencing issue, but need not prove relief from the underlying conviction"); *Garcia* v. *Ball*, 303 Kan. 560, 573, 363 P.3d 399 (2015) (concluding that, to pursue legal malpractice claim related to illegal sentence, plaintiff had to "obtain [postsentencing] relief from the unlawful sentence"); *Johnson* v. *Babcock*, 206 Or. App. 217, 224, 136 P.3d 77 (stating that when "[a] plaintiff alleges that he received a legally impermissible sentence, not merely a 'bad deal,' that he served more of the sentence than was legally permissible, *and that he obtained* [*postjudgment*] *relief from the sentence*, we conclude that [such a] plaintiff properly alleged [the] harm [element of a legal malpractice claim]" (emphasis added)), review denied, 341 Or. 450, 143 P.3d 773 (2006).

Applying the rationale of *Taylor* to the present case, we conclude that the plaintiff's tort claims, as set forth in counts one and two, are not ripe for adjudication. To succeed on these claims, the plaintiff would have to demonstrate that the defendant's alleged conduct led to the imposition of an erroneous restitution order by the federal sentencing court, which would necessarily undermine the validity of his sentence. Such a collateral attack on the plaintiff's sentence is not permissible. In short, as long as the plaintiff's sentence stands, his tort

claims are not ripe for review.

The plaintiff argues that *Taylor* is inapplicable to the facts of this case because the plaintiff in *Taylor* was able to pursue postconviction relief whereas in the present case the plaintiff cannot challenge the restitution component of his sentence because he is precluded from filing a motion pursuant to 28 U.S.C. § 2255 (2018).[10] See *United States* v. *Rutigliano*, 887 F.3d 98, 105–107 (2d Cir. 2018) (restitution orders cannot be challenged by motion filed under 28 U.S.C. § 2255, other than in " 'rare' " circumstances when restitution orders equate to custodial punishment). We are not persuaded. The crux of *Taylor* is that, so long as a plaintiff's conviction or sentence remains valid, it cannot be vitiated indirectly by a tort action commenced against counsel.[11] Whether the plaintiff was or is able to attack the restitution order in another proceeding is of no moment.[12] In addition, although *Taylor* highlights the specter of multiple courts issuing conflicting decisions over the same subject matter, we construe that to be an *added* reason why a tort action against counsel predicated on an allegedly improper conviction or sentence cannot be pursued while the conviction or sentence is intact. The central point remains that a valid conviction or sentence cannot be undone collaterally by a tort action brought by a plaintiff against his or her counsel. See *Heck* v. *Humphrey*, supra, 512 U.S. 486 (noting "hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments").

As a final matter, our conclusion that the plaintiff's tort claims are not ripe for review means that the trial court lacked subject matter jurisdiction to entertain them. A court must dismiss claims over which it lacks subject matter jurisdiction. See *Gershon* v. *Back*, 201 Conn. App. 225, 244, 242 A.3d 481 (2020) ("[w]henever a court finds that it has no jurisdiction, it must dismiss the case" (internal quotation marks omitted)). Accordingly, as to the summary judgment rendered in the defendant's favor on the plaintiff's tort claims, we conclude that the form of the judgment is improper because a judgment of dismissal must be rendered with respect to those claims.

The form of the judgment with respect to the summary judgment rendered in the defendant's favor on counts one and two of the plaintiff's amended complaint is improper, the judgment is reversed as to counts one and two, and the case is remanded with direction to render judgment dismissing those counts; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The plaintiff also was indicted on a charge of making a false statement to a financial institution in violation of 18 U.S.C. §§ 2 and 1014 (2006). That charge was subsequently dismissed.

[2] On June 4, 2019, pursuant to Practice Book § 10-44, the defendant filed a motion for judgment on the stricken CUTPA count. On the basis of the

record before us, it appears that the court never adjudicated the motion for judgment. It is well established that "[t]he granting of a motion to strike . . . ordinarily is not a final judgment . . . ." (Internal quotation marks omitted.) *Sempey* v. *Stamford Hospital*, 180 Conn. App. 605, 618, 184 A.3d 761 (2018). Nevertheless, "[i]n similar circumstances where a count of a complaint was stricken, but the plaintiff failed to plead over, no judgment was entered thereon and the remaining counts were disposed of by way of summary judgment, this court has considered the appeal to have been from a final judgment." *DeCorso* v. *Calderaro*, 118 Conn. App. 617, 624, 985 A.2d 349 (2009), cert. denied, 295 Conn. 919, 991 A.2d 564 (2010); see also *Sieranski* v. *TJC Esq, A Professional Services Corp.*, 203 Conn. App. 75, 80–81 n.4, 247 A.3d 201 (2021) (declining defendant's invitation to reconsider issue of whether final judgment existed in appeal—filed after rendering of summary judgment—that challenged granting of motion to strike count of plaintiff's original complaint notwithstanding fact that judgment had not been rendered on stricken count, where this court previously had denied defendant's motion to dismiss appeal predicated on same issue). Accordingly, under the circumstances of this case, we conclude that this appeal is taken from a final judgment.

[3] Although *Haynes* and *Janusauskas* are medical malpractice cases, we consider their reasoning regarding CUTPA to be highly instructive in legal malpractice cases.

[4] With regard to the CUTPA claim, the plaintiff also alleged that "[t]he defendant refused to release a copy of the plaintiff's file upon repeated requests, precluding the plaintiff from fully determining the facts underlying a cause of action against the defendant. The defendant went so far as to represent to the Connecticut Grievance Panel that he had an agreement with the Office of the United States Attorney that forbid him from releasing the contents of the plaintiff's entire file, other than the plaintiff's own closing files, when no such agreement existed, thus fraudulently concealing the plaintiff's cause of action under . . . General Statutes § 52-595." The plaintiff made substantively similar allegations in the other two counts of his amended complaint. We do not construe these allegations as supporting the merits of the CUTPA claim; rather, the ostensible purpose of these allegations was to avoid the running of the statute of limitations contained in CUTPA. Even assuming that these allegations were pleaded to support the merits of the CUTPA claim, we conclude that an attorney's refusal to release a current or former client's file does not constitute entrepreneurial activity and, thereby, falls outside of the scope of CUTPA.

[5] We note that, although count one of the plaintiff's amended complaint asserted legal malpractice, the allegations concerning the defendant's statements to the plaintiff during the meeting between the parties were not pleaded in support of that count.

[6] As an alternative ground for affirmance, the defendant argues that the plaintiff's CUTPA claim was time barred. Because we conclude that the court properly struck the CUTPA claim on the ground that it was legally insufficient, we do not address further this alternative ground for affirmance.

[7] The defendant also argues that the summary judgment rendered in his favor can be affirmed on the basis that the court correctly concluded that the limitation period had expired as to the plaintiff's tort claims. Additionally, as an alternative ground for affirmance, the defendant argues that the plaintiff could not prevail on the tort claims because he failed to disclose an expert witness. Our conclusion that the trial court lacked subject matter jurisdiction over the tort claims is dispositive of the portion of the plaintiff's appeal challenging the summary judgment rendered in the defendant's favor, and, thus, we need not address the defendant's additional arguments.

[8] Although the defendant raised the ripeness argument in his motion for summary judgment, the trial court did not address it in its decision granting the motion. "Our Supreme Court has stated that [o]nly in [the] most exceptional circumstances can and will this court consider a claim, constitutional or otherwise, that has not been raised *and decided* in the trial court. . . . This rule applies equally to alternat[ive] grounds for affirmance. . . . One such exceptional circumstance is a claim that implicates the trial court's subject matter jurisdiction, which may be raised at any time and, thus, is not subject to our rules of preservation." (Citation omitted; emphasis in original; internal quotation marks omitted.) *Board of Education* v. *Bridgeport*, 191 Conn. App. 360, 378–79 n.8, 214 A.3d 898 (2019). "[R]ipeness implicates the court's subject matter jurisdiction"; id., 379 n.8; and, therefore, it is proper for us to consider the ripeness issue presented by the defendant.

[9] "Without doubt, a restitution order is part of [a] sentence . . . ." *United*

*States* v. *Oladimeji*, 463 F.3d 152, 156 (2d Cir. 2006).

[10] Title 28 of the United States Code, § 2255, provides in relevant part: "(a) A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence. . . ."

[11] We note at this juncture that we do not consider whether the rationale of *Taylor* extends beyond tort claims. That is, the ripeness analysis contained herein is not applicable to the plaintiff's CUTPA claim, which we addressed in part I of this opinion, because, as opposed to his legal malpractice and breach of fiduciary claims, the plaintiff failed to support his CUTPA claim with allegations that the defendant engaged in conduct that caused the plaintiff harm in the form of an erroneous restitution order. In other words, on the basis of the allegations underlying the CUTPA claim, recovery under the CUTPA claim would not necessarily undermine the validity of the plaintiff's sentence. Cf. *Taylor* v. *Wallace*, supra, 184 Conn. App. 49 n.4 ("[w]e do not see any reasonable scenario of recovery . . . that does not necessarily undermine the validity of the conviction"). Additionally, we observe that *Taylor* expressly addressed tort actions in its ripeness analysis. See id., 51 ("if success *in a tort action* would necessarily imply the invalidity of a conviction, the action is to be dismissed unless the underlying conviction has been invalidated" (emphasis added)). We express no opinion as to whether, under different circumstances, the rationale of *Taylor* would extend to a CUTPA claim.

[12] Although the plaintiff contends that a motion under 28 U.S.C. § 2255 is unavailable to him, we do not interpret his argument to be that there are *no* possible avenues to contest the restitution order. See, e.g., *United States* v. *Rutigliano*, supra, 887 F.3d 108–109 (leaving open question of whether writ of error coram nobis can be used to challenge restitution component of sentence and concluding that, even if coram nobis relief was available to defendant, she had failed to demonstrate entitlement to such relief). Indeed, in his amended complaint, the plaintiff alleged that the restitution order could not "be reopened *except under extraordinary circumstances.*" (Emphasis added.)

We also observe that the plea agreement entered into by the plaintiff included a waiver term providing in relevant part that "[t]he [plaintiff] acknowledges that under certain circumstances he is entitled to challenge his conviction and sentence. The [plaintiff] agrees not to appeal or collaterally attack in any proceeding . . . the conviction or sentence imposed . . . if that sentence does not exceed [certain thresholds, including a $1.6 million order of restitution]. . . . Furthermore, the [plaintiff and the United States Attorney's Office for the District of Connecticut] agree that any challenge to the [plaintiff's] sentence that is not foreclosed by this provision will be limited to that portion of the sentencing calculation that is inconsistent with (or not addressed by) this waiver." The plaintiff makes no reference to this waiver provision in addressing on appeal the defendant's ripeness argument.