******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# BARRY PRINGLE *v.* NORMAN PATTIS ET AL.
## (AC 44830)

Prescott, Clark and DiPentima, Js.

*Syllabus*

The self-represented plaintiff, who was incarcerated following his conviction, on pleas of guilty, of various criminal charges including attempted murder, sought damages for, inter alia, the alleged legal malpractice of the defendants, attorneys who represented the plaintiff with respect to his criminal convictions. The plaintiff claimed that he suffered monetary damages as a result of the defendants' representation, alleging that, after entering into flat fee agreements for their services, the defendants demanded additional funds to continue their representation and that one of the defendants executed asset forfeiture agreements relating to approximately $17,000 that the state had seized from the plaintiff, without the plaintiff's knowledge or consent and after the applicable statutory (§§ 54-36h (b) and 54-36p (b)) period for the seizures had ended. The plaintiff also claimed that the defendants had pressured him into pleading guilty to the charges against him, even though he was not competent to do so at the time as a result of emotional distress caused by his mother's recent death. The trial court granted the defendants' motion to dismiss, concluding that it was without subject matter jurisdiction due to the exoneration rule, which required the plaintiff to demonstrate that his underlying convictions had been invalidated prior to proceeding with his legal malpractice claims. On the plaintiff's appeal to this court, *held* that the trial court improperly dismissed the plaintiff's claims relating to the fee dispute and the forfeiture agreements but properly dismissed, for lack of subject matter jurisdiction, the plaintiff's legal malpractice claim as to the actions of the defendants in allegedly pressuring him to enter guilty pleas with respect to the charges against him: contrary to the plaintiff's claim, Connecticut courts have adopted and applied the exoneration rule to bar civil claims that necessarily imply the invalidity of an underlying conviction, however, such rule does not bar civil claims that do not challenge the validity of an underlying conviction; moreover, the plaintiff's claims relating to the fee dispute and the forfeiture agreements were entirely collateral to, and did not seek to attack, the plaintiff's guilty pleas and convictions, as his fee dispute claims challenged only the fees that the defendants charged for their representation and his forfeiture agreement claims did not allege that the forfeiture agreements were a component of his criminal sentence but, rather, asserted only that, at the time the agreements were executed, it was too late for the state to seek the forfeiture of his seized assets pursuant to §§ 54-36h (b) and 54-36p (b); furthermore, the plaintiff's legal malpractice claim as to the actions of the defendants in improperly pressuring him to enter into his guilty pleas did constitute a collateral attack on his guilty pleas and convictions and created a risk of inconsistent judgments; accordingly, the plaintiff's claims relating to the fee dispute and the forfeiture agreements were ripe and were not barred by the exoneration rule, however, his claim relating to the improper pressure the defendants allegedly exerted against him with respect to his guilty pleas was not ripe and was barred by the exoneration rule.

(*One judge concurring separately*)

Argued March 8—officially released May 31, 2022

*Procedural History*

Action to recover damages for, inter alia, legal malpractice, and for other relief, brought to the Superior Court in the judicial district of New Haven, where the court, *Abrams, J.*, granted the defendants' motion to dismiss and rendered judgment thereon, from which the plaintiff appealed to this court. *Reversed in part*; *further proceedings*.

*Barry Pringle*, self-represented, the appellant (plaintiff).

*Cameron L. Atkinson*, with whom, on the brief, was *Earl Austin Voss*, for the appellees (defendants).

*Opinion*

DiPENTIMA, J. The self-represented plaintiff, Barry Pringle, appeals[1] from the judgment of the trial court granting the motion to dismiss filed by the defendants, Norman Pattis, Frederick M. O'Brien and Daniel M. Erwin.[2] On appeal, the plaintiff claims that the court improperly dismissed his complaint for lack of subject matter jurisdiction on the basis of the exoneration rule, which generally provides that a legal malpractice claim is not ripe for adjudication unless the plaintiff can demonstrate that the relevant underlying conviction has been invalidated. We reverse in part the judgment of the trial court.

The following facts, as alleged in the complaint or as otherwise undisputed in the record, and procedural history are relevant to this appeal. Between February, 2014, and February, 2015, the plaintiff was arraigned on myriad charges, including promoting prostitution, possession of narcotics with intent to sell, sale of narcotics and attempted murder. In connection therewith, the state seized and/or froze approximately $17,000 of the plaintiff's assets. In February, 2015, the plaintiff retained the defendants, of the law firm Pattis & Smith, to represent him in connection with his pending criminal charges and the related asset seizure.[3]

On February 5, 2016, the plaintiff pleaded guilty to charges of the sale of certain illegal drugs in violation of General Statutes (Rev. to 2013) § 21a-278 (b), tampering with a witness in violation of General Statutes (Rev. to 2015) § 53a-151, assault in the first degree in violation of General Statutes § 53a-59, promoting prostitution in the second degree in violation of General Statutes (Rev. to 2013) § 53a-87 and possession of narcotics with the intent to sell in violation of General Statutes (Rev. to 2013) § 21a-277 (a). The court canvassed the plaintiff, accepted his pleas and sentenced the plaintiff to a total effective sentence of ten years of imprisonment followed by ten years of special parole.

The plaintiff subsequently made several challenges seeking to invalidate his guilty pleas, none of which has been successful. On March 11, 2016, the plaintiff filed a motion to vacate his guilty pleas on the grounds that they were involuntary and entered under duress because of the recent death of his mother; that motion was denied. On April 6, 2017, the plaintiff filed a petition for a writ of habeas corpus alleging that the defendants provided him ineffective assistance of counsel in connection with his guilty pleas and that his guilty pleas were not voluntary. The plaintiff's habeas corpus petition remains pending. See *Pringle* v. *Commissioner of Correction*, Superior Court, judicial district of Tolland, Docket No. CV-17-4008733-S. Accordingly, despite his attempts,[4] the plaintiff's convictions remain valid.

On January 28, 2019, the plaintiff commenced the

underlying civil action against the defendants by way of a two count complaint. The crux of the plaintiff's complaint is that the defendants' representation of the plaintiff in the criminal and forfeiture proceedings caused the plaintiff to suffer monetary damages. The complaint specifically alleges the following: the plaintiff entered into an oral contract with Pattis, whereby Pattis agreed to represent him as to the prostitution, drugs and asset forfeiture matters for the flat fee of $10,000 and as to the attempted murder charge for the flat fee of $25,000; Pattis later orally demanded an additional $20,000 for his representation with respect to the attempted murder charge; and the plaintiff paid the defendants a total sum of $45,000.

As to the forfeiture proceedings, the complaint alleges that O'Brien signed three forfeiture agreements as to the approximately $17,000 of assets that the state had seized from the plaintiff; that the plaintiff was not consulted about these forfeiture agreements and that they were executed without his consent; and that these agreements failed to include $1800 of "unaccounted for" assets that were seized in relation to his prostitution charges.

As to the events leading to his guilty pleas, the complaint alleges the following: because the plaintiff's mother unexpectedly died on the eve of the trial set for his "drug charges," and because he was arrested for tampering with a witness on the day after her burial, he experienced intense grief and psychological trauma, becoming severely depressed; Pattis demanded the outstanding balance of $10,000 prior to the trial of the attempted murder charge and withdrew the plaintiff's request for a speedy trial when he learned of the plaintiff's inability to pay; and the defendants pressured the plaintiff into pleading guilty to "various charges" in exchange for a total effective sentence of ten years of incarceration with ten years of special parole, resulting in his entering guilty pleas on February 5, 2016, despite the fact that he was not competent, given the recent death of his mother and the pressure applied on him by the defendants.

On the basis of these factual allegations, the plaintiff purported to make a variety of legal claims in his complaint. Count one of the complaint is titled "Breach of Contract; Legal Malpractice; Breach of Fiduciary Duty; Fraud; Fraudulent Misrepresentation." Count two of the complaint is titled "Negligent Infliction of Emotional Distress; Intentional Infliction of Emotional Distress." The complaint concludes with a demand for specific amounts of money damages from the defendants.

On April 22, 2019, the defendants moved to dismiss the plaintiff's entire complaint for lack of subject matter jurisdiction on the ground that it is barred by the exoneration rule. The defendants argued that the exoneration rule bars the plaintiff's complaint because it challenges

his criminal convictions that remain valid and, therefore, his action is not ripe. On May 10, 2019, the plaintiff filed a memorandum of law in opposition, arguing that Connecticut courts have neither adopted nor rejected the exoneration rule and, alternatively, that his complaint contains colorable claims that the court should address.

On September 11, 2019, the court, after oral argument, granted the defendants' motion to dismiss. The court concluded that "[t]he issue in this case is whether the court is without [subject matter] jurisdiction based on the 'exoneration rule.' While both parties maintain that the rule has not been adopted at the appellate level in Connecticut, this court is of the opinion that it was adopted in the case of *Taylor* v. *Wallace*, 184 Conn. App. 43, 52, 194 A.3d 343 (2018), and, as a result, the motion to dismiss is granted." This appeal followed.

On appeal, the plaintiff claims that the court improperly dismissed his entire complaint on the ground of the exoneration rule. The plaintiff makes two primary arguments in support of his claim. First, he argues that Connecticut courts have not adopted the exoneration rule. Second, he argues, alternatively, that the court improperly applied the exoneration rule to dismiss all of the claims in his complaint.

We begin with the applicable legal principles and standard of review. "A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss will be de novo. . . . When a . . . court decides a jurisdictional question raised by a pretrial motion to dismiss, it must consider the allegations of the complaint in their most favorable light. . . . In this regard, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Internal quotation marks omitted.) *Tremont Public Advisors, LLC* v. *Connecticut Resources Recovery Authority*, 333 Conn. 672, 688, 217 A.3d 953 (2019). Our interpretation of the plaintiff's complaint also is a question of law subject to plenary review, and "we are not bound by the label affixed" by the plaintiff to his claims. *BNY Western Trust* v. *Roman*, 295 Conn. 194, 210, 990 A.2d 853 (2010). Consistent with our policy of leniency to self-represented litigants, we construe the plaintiff's complaint " 'broadly and realistically, rather than narrowly and technically.' " *Santana* v. *Commissioner of Correction*, 208 Conn. App. 460, 465, 264 A.3d 1056 (2021), cert. denied, 340 Conn. 920, 267 A.3d 857 (2022).

"[J]usticiability comprises several related doctrines, namely, standing, ripeness, mootness and the political question doctrine, that implicate a court's subject mat-

ter jurisdiction and its competency to adjudicate a particular matter. . . . A case that is nonjusticiable must be dismissed for lack of subject matter jurisdiction. . . . [T]he rationale behind the ripeness requirement is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements . . . . Accordingly, in determining whether a case is ripe, a trial court must be satisfied that the case before [it] does not present a hypothetical injury or a claim contingent upon some event that has not and indeed may never transpire." (Emphasis omitted; internal quotation marks omitted.) *Francis* v. *Board of Pardons & Paroles*, 338 Conn. 347, 358–59, 258 A.3d 71 (2021). "[I]n determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Dorry* v. *Garden*, 313 Conn. 516, 521, 98 A.3d 55 (2014).

Generally, the exoneration rule provides that "a legal malpractice claim is not ripe for adjudication unless the plaintiff can demonstrate that the relevant underlying conviction has been invalidated." *Green* v. *Paz*, 211 Conn. App. 152, 153, 271 A.3d 1138 (2022). Accordingly, "if success in a tort action would necessarily imply the invalidity of a conviction, the action is to be dismissed unless the underlying conviction has been invalidated." *Taylor* v. *Wallace*, supra, 184 Conn. App. 51. Contrary to the plaintiff's first argument, "this court repeatedly has applied the exoneration rule . . . ." *Green* v. *Paz*, supra, 155.[5]

In *Taylor*, this court concluded that the legal malpractice action brought by the plaintiff, David Taylor, was unripe on the basis of the exoneration rule. *Taylor* v. *Wallace*, supra, 184 Conn. App. 47–52. Taylor, serving a sentence pursuant to a valid conviction, filed a complaint alleging, among other things, that his prior habeas attorney provided him with deficient representation. Id., 45–46. This court rejected Taylor's argument "that he is not attacking the conviction, but is merely seeking monetary damages," and held that, "[t]o prove his malpractice action, [Taylor] presumably would have to prove that he would not have sustained the injury had professional negligence not occurred. Thus, a successful result in this case would necessarily imply that the conviction was improper." Id., 52 n.5. This court concluded that Taylor's action was not ripe because Taylor "has been convicted and that conviction has withstood a number of attacks. For so long as the conviction stands, an action collaterally attacking the conviction may not be maintained." (Footnote omitted.) Id., 52.

Next, in *Dressler* v. *Riccio*, 205 Conn. App. 533, 534–35, 259 A.3d 14 (2021), this court concluded that the exoneration rule barred the plaintiff's complaint. The plaintiff, Lawrence Dressler, filed a complaint asserting legal malpractice and breach of fiduciary duty claims,

alleging that his prior criminal trial counsel's faulty representation caused him to incur, as part of his sentence, an order to pay $403,450.75 as restitution. Id., 535. This court concluded that Dressler's claims were not ripe pursuant to the exoneration rule because, "[t]o succeed on these claims, the plaintiff would have to demonstrate that the defendant's alleged conduct led to the imposition of an erroneous restitution order by the federal sentencing court, which would necessarily undermine the validity of his sentence. Such a collateral attack on the plaintiff's sentence is not permissible. In short, as long as the plaintiff's sentence stands, his tort claims are not ripe for review." Id., 552.

Thereafter, in *Cooke* v. *Williams*, 206 Conn. App. 151, 165, 177, 259 A.3d 1211, cert. denied, 339 Conn. 919, 262 A.3d 136 (2021), cert. denied,     U.S.    ,     S. Ct.     ,     L. Ed. 2d     (2022), this court concluded that the exoneration rule barred only some of the claims made in the complaint. The plaintiff, Ian T. Cooke, serving a sentence pursuant to a valid conviction, filed a complaint against his prior habeas attorneys, alleging claims for legal malpractice, negligence, fraud, breach of the covenant of good faith and fair dealing and breach of contract. Id., 153–54. "The gravamen of [Cooke's] claims was that the defendants neglected to prosecute his actions fully and properly and that they fraudulently billed him for the work performed." Id., 154. This court held that Cooke's legal malpractice claim was not ripe because it was a "collateral attack on his underlying conviction that has not been invalidated either on direct appeal . . . or through habeas proceedings." (Citation omitted.) Id., 162–63. Conversely, this court held that Cooke's fraud claim was ripe and not barred by the exoneration rule because "some of the allegations made in support of his fraud claim are significantly distinct from his legal malpractice claim allegations because, if successful, they would not demonstrate the invalidity of his underlying conviction." Id., 166. Relying on Cooke's allegations that his habeas attorneys "overcharged for their work by misrepresenting their standard rate for habeas clients, inflated or padded the hours worked on matters in connection with their representation of the plaintiff, or charged the plaintiff for work they did not perform"; id., 176; this court concluded that "the allegations that the plaintiff makes in support of his fraud claim that merely constitute a fee dispute and that do not implicate the validity of his underlying conviction are not controlled by *Taylor*, and that dismissal of his fraud claim was unwarranted." Id., 177.

Most recently, in *Green* v. *Paz*, supra, 211 Conn. App. 155, this court held that the civil action filed by the validly convicted plaintiff, Courtney Green, against his former habeas counsel was barred by the exoneration rule. Green's complaint asserted "three counts sounding in legal malpractice against [his former habeas counsel] stemming from their representation of the plaintiff

in the habeas appeal." Id., 154. This court concluded that "the application of the exoneration rule to the plaintiff's claims does not warrant expansive discussion, as our adoption of the exoneration rule remains good law, and it is undisputed that the plaintiff's conviction, which the plaintiff's legal malpractice claims collaterally attack, presently remains valid. Thus, applying the holding of *Taylor*, as well as its progeny, we conclude that the trial court properly dismissed the plaintiff's legal malpractice action for lack of subject matter jurisdiction." Id., 155.

In short, the exoneration rule bars civil claims that necessarily imply the invalidity of an underlying conviction; however, the exoneration rule *does not* bar civil claims that do not challenge the validity of an underlying conviction. Consequently, we turn to the claims contained within the plaintiff's complaint in the present case to determine whether they seek to invalidate his guilty pleas and resultant convictions and, thus, are barred as unripe by the exoneration rule.

Although the complaint contains two counts and the plaintiff attaches many talismanic labels to his claims, we read the complaint to assert four separate claims.[6] First, the plaintiff claims that Pattis' demand of an additional $20,000 to represent him on the attempted murder charge breached the parties' oral contract whereby they agreed to a fixed sum of $25,000. Second, the plaintiff claims that the defendants engaged in fraud when they charged and collected an unreasonable fee because he had paid Pattis $35,000 to represent him on the attempted murder charge despite the fact that this charge never proceeded to trial. Third, the plaintiff claims that O'Brien engaged in legal malpractice, breached his fiduciary duties, and breached the oral retainer agreement by executing the forfeiture agreements without the plaintiff's consent and after the time frame for the state to commence a civil action in equity to obtain the forfeiture of such assets pursuant to General Statutes §§ 54-36h (b) and 54-36p (b). Fourth, the plaintiff asserts a broad claim that the defendants engaged in legal malpractice, breached their fiduciary duties, and caused him to suffer emotional distress by improperly pressuring him to enter into guilty pleas. Guided by *Taylor*, *Dressler*, *Cooke*, and *Green*, we conclude that the exoneration rule bars only the plaintiff's fourth claim.

Neither the plaintiff's first nor second claim implicates the validity of his convictions because each claim simply challenges the fees that the defendants charged the plaintiff for their representation. The fee dispute between the plaintiff and the defendants is entirely collateral to the plaintiff's guilty pleas and convictions. The plaintiff need not invalidate his pleas nor his convictions to prevail on his fee dispute claims. The question as to whether the plaintiff is entitled to damages as a result of the defendants' demand for additional fees has

nothing to do with his criminal convictions. Indeed, this type of fee dispute is markedly similar to the claim that survived the exoneration rule in *Cooke*. See *Cooke* v. *Williams*, supra, 206 Conn. App. 176–77 (holding that plaintiff's claim that defendants "overcharged for their work by misrepresenting their standard rate for habeas clients, inflated or padded the hours worked on matters in connection with their representation of the plaintiff, or charged the plaintiff for work they did not perform" was not barred by exoneration rule because "in a fee dispute, the criminally convicted plaintiff is not seeking to shift the responsibility for and consequences of his criminal acts to his former counsel, nor is the client's own criminal act the ultimate source of his predicament"). Therefore, we conclude that the plaintiff's claims relating to the fees charged by the defendants are ripe and are not barred by the exoneration rule.

The plaintiff's third claim, which concerns O'Brien's allegedly improper execution of the asset forfeiture agreements, likewise does not implicate the validity of the plaintiff's convictions. In particular, the complaint alleges with respect to this claim that the plaintiff was not consulted as to these agreements and that they were executed after the time frame for the state to commence a civil action in equity to obtain the forfeiture of such money pursuant to §§ 54-36h (b) and 54-36p (b).[7] Both §§ 54-36h (b) and 54-36p (b) impose a ninety day time frame within which the state may commence a civil action in equity to order the forfeiture of seized property.[8] Particularly, both statutes provide that the state must commence the forfeiture proceedings "[n]ot later than ninety days after the seizure of moneys or property subject to forfeiture . . . ." General Statutes §§ 54-36h (b) and 54-36p (b). Both statutes also provide that each such forfeiture proceeding "shall be deemed a civil suit in equity, in which the state shall have the burden of proving all material facts by clear and convincing evidence" and that, "[a]t such hearing the court shall hear evidence and make findings of fact and enter conclusions of law and shall issue a final order, from which the parties shall have such right of appeal as from a decree in equity." General Statutes §§ 54-36h (b) and 54-36p (b); see also *State* v. *Garcia*, 108 Conn. App. 533, 554, 949 A.2d 499 (holding that unambiguous language of § 54-36h permits state to petition "court in the nature of a proceeding in rem to order forfeiture" (internal quotation marks omitted)), cert. denied, 289 Conn. 916, 957 A.2d 880 (2008).

Accordingly, the plaintiff's asset forfeiture agreement claim is not barred by the exoneration rule because it does not seek to invalidate his guilty pleas, convictions, or sentence. Rather, the plaintiff's claim is that, at the time the forfeiture agreements were executed, it was too late for the state to seek the forfeiture of his seized assets, pursuant to §§ 54-36h (b) and 54-36p (b), because more than ninety days had lapsed since the seizure of

his assets. His claim is entirely contingent on the time in which the state could commence an in rem proceeding to obtain an order requiring the forfeiture of his seized assets. The narrow claim as to the timing of the state's ability to commence forfeiture proceedings is collateral to, and does not seek to invalidate, the plaintiff's convictions. The plaintiff could prevail on this legal malpractice claim without having to demonstrate the invalidity of his underlying conviction, so this claim is not barred by the exoneration rule. We further note that the plaintiff's forfeiture agreements claim in the present case is dissimilar from the monetary claim at issue in *Dressler*, which was barred by the exoneration rule. See *Dressler* v. *Riccio*, supra, 205 Conn. App. 551–52 (holding that exoneration rule barred civil action seeking to challenge restitution order because restitution is "component of" plaintiff's criminal sentence and reiterating that crux of rule is that "so long as a plaintiff's conviction or sentence remains valid, it cannot be vitiated indirectly by a tort action commenced against counsel"). Here, unlike in *Dressler*, the plaintiff does not allege that the forfeiture agreements were a component of his criminal sentence. See footnote 7 of this opinion. Therefore, indulging every presumption in favor of jurisdiction, we conclude that the plaintiff's forfeiture agreements claim is ripe and is not barred by the exoneration rule.

Finally, the plaintiff's legal malpractice claim as to the actions of the defendants in improperly pressuring him to enter into his guilty pleas constitutes a collateral attack on his guilty pleas and convictions. This is the precise type of legal malpractice claim that the exoneration rule prohibits because such a claim challenges the validity of his convictions. In pursuit of a legal malpractice claim that challenges a valid conviction, the plaintiff in the present case, like the plaintiffs in *Taylor*, *Cooke*, *Dressler* and *Green*, would "have to prove that he would not have sustained the injury had professional negligence not occurred. Thus, a successful result in this case would necessarily imply that the conviction was improper." *Taylor* v. *Wallace*, supra, 184 Conn. App. 52 n.5; see also *Dressler* v. *Riccio*, supra, 205 Conn. App. 546 (outlining elements required to prove legal malpractice claim). The plaintiff's allegations in his complaint as to the validity of his pleas largely are founded on the pressure that the defendants allegedly exerted on the plaintiff to plead guilty and, accordingly, clearly implicate the sufficiency of the defendants' representation in the plaintiff's criminal proceedings. See *Henderson* v. *Commissioner of Correction*, 181 Conn. App. 778, 797–98, 189 A.3d 135 (explaining proof required to prevail on legal malpractice claim challenging counsel's deficient representation), cert. denied, 329 Conn. 911, 186 A.3d 707 (2018).

The plaintiff's legal malpractice claim as to his pleas creates a risk of inconsistent judgments that the exoner-

ation rule is intended to prevent. See *Cooke* v. *Williams*, supra, 206 Conn. App. 162 (exoneration rule promotes consistency of judgments). If the plaintiff were allowed to continue prosecuting his legal malpractice claim against the defendants, the trial court in this case and the habeas court considering the plaintiff's pending habeas petition conceivably could render inconsistent judgments in which one court determines that the defendants' performance was deficient while the other court determines that it was not deficient. For as long as the plaintiff's convictions stand, his civil legal malpractice action against the defendants challenging the validity of his convictions is not ripe for adjudication and may not be maintained. Therefore, we conclude that the plaintiff's legal malpractice claim as to the actions of the defendants in improperly pressuring him to enter into his guilty pleas is not ripe and is barred by the exoneration rule.[9]

The judgment is reversed with respect to the claims regarding the fee dispute and the forfeiture agreements, and the case is remanded with direction to deny the motion to dismiss as to those claims and for further proceedings according to law; the judgment is affirmed in all other respects.

In this opinion CLARK, J., concurred.

[1] After the plaintiff's previous appeals from the judgment of the trial court were rejected and dismissed as untimely; *Pringle* v. *Pattis*, Connecticut Appellate Court, Docket No. 44212 (filed August 12, 2020); *Pringle* v. *Pattis*, Connecticut Appellate Court, Docket No. 44141 (filed June 19, 2020); this court granted the plaintiff permission to proceed with the present appeal.

[2] In this opinion, we refer to Pattis, O'Brien and Erwin collectively as the defendants and individually by name where appropriate.

[3] The plaintiff had retained different counsel, Timothy Moynahan, between February, 2014, and February, 2015.

[4] On January 21, 2021, the plaintiff also filed a motion to correct an illegal sentence, arguing, among other things, that he was incompetent at the time of his sentencing. On April 8, 2021, the trial court denied the plaintiff's motion to correct. See *State* v. *Pringle*, Superior Court, judicial district of Waterbury, Docket Nos. CR-14-0422840-T, CR-14-0424978-T, CR-14-0429402-T, and CR-14-036349 (April 8, 2021).

[5] The exoneration rule, as applied in Connecticut, stems from this court's adoption in *Taylor* of the standard set forth in *Heck* v. *Humphrey*, 512 U.S. 477, 486–87, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994) (holding that claim pursuant to 42 U.S.C. § 1983 was not ripe on basis of exoneration rule because success of claim would necessarily imply invalidity of underlying conviction; however, plaintiff's action would not be barred if action "will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff" (emphasis omitted)). See *Taylor* v. *Wallace*, supra, 184 Conn. App. 51–52. Although our Supreme Court has cited *Heck* with approval on several occasions, we agree with the concurrence that our Supreme Court has not expressly adopted the exoneration rule. See, e.g., *Mangiafico* v. *Farmington*, 331 Conn. 404, 421, 204 A.3d 1138 (2019) (quoting *Heck* for proposition that " '§ 1983 contains no exhaustion requirement beyond what Congress has provided' "); *Lopes* v. *Farmer*, 286 Conn. 384, 389, 944 A.2d 921 (2008) (citing *Heck* for proposition that, "[b]ecause one of the elements of the tort of malicious prosecution is favorable termination of the underlying action, a cause of action for malicious prosecution accrues only when the underlying action terminates in the plaintiff's favor").

[6] The defendants did not file a request to revise the complaint to separate the many claims contained therein; see *Doe* v. *Cochran*, 332 Conn. 325, 332 n.2, 210 A.3d 469 (2019); and the defendants' appellate brief does not attempt to separate the various claims made in the plaintiff's complaint. We iterate that our interpretation of the plaintiff's complaint is subject to plenary

review. See *BNY Western Trust* v. *Roman*, supra, 295 Conn. 210.

[7] We note that there *are* separate forfeiture proceedings made as part of the criminal proceedings for "contraband" and "stolen property" seized as part of a criminal arrest. See General Statutes § 54-36a (authorizing judicial disposition of contraband and stolen property at conclusion of criminal trial); *State* v. *Garcia*, 108 Conn. App. 533, 552–54, 949 A.2d 499 (delineating difference between forfeiture at conclusion of criminal trial pursuant to § 54-36a, and civil forfeiture through separate equitable proceeding pursuant to § 54-36h), cert. denied, 289 Conn. 916, 957 A.2d 880 (2008); see also *State* v. *Redmond*, 177 Conn. App. 129, 140–41, 171 A.3d 1052 (2017) (holding that there was sufficient nexus between seized weapons and defendant's illicit narcotics business and, thus, court's order of forfeiture, pursuant to § 54-36a, at conclusion of criminal trial was proper). The plaintiff's claim, however, is founded on the forfeiture agreements' purported violation of the civil prescriptions of §§ 54-36h (b) and 54-36p (b). These parallel criminal forfeiture proceedings do not change the outcome of this appeal because (1) our review is confined to the allegations of the plaintiff's complaint; (2) the plaintiff's complaint does not allege that the asset forfeiture agreements were part of his criminal sentence, part of a plea agreement, improper because his seized property insufficiently was connected to his illicit business dealings, or entered at the conclusion of a criminal trial; and (3) we are required to interpret the complaint in the light most favorable to the plaintiff and indulge every presumption favoring jurisdiction. See *Dorry* v. *Garden*, supra, 313 Conn. 521.

[8] The only material difference between §§ 54-36h and 54-36p is that § 54-36h applies to seized property relating to the sale of controlled substances, whereas § 54-36p applies to seized property relating to sexual exploitation and prostitution.

[9] Our decision is confined to the narrow legal issue as to the ripeness of the plaintiff's claims. We do not reach the relative merits of any of the plaintiff's claims.